[No. 912.]

THE COUNTY OF WASHOE, RESPONDENT, *v.* THE COUNTY OF HUMBOLDT, APPELLANT.

TRANSFER OF CRIMINAL CASES—IRREGULARITY IN PAYMENT OF CLAIMS.— Where a criminal case is transferred from one county to another, the former is liable for all costs and expenses incurred in the trial of said cause, and it cannot complain of any mere irregularity in the mode of paying the expenses, in the first instance, by the latter county. [Beatty, J., dissenting in part.]

IDEM—ILLEGAL FEES.—The county from which the cause was transferred has the right to show that the services charged for were never rendered, or that the fees charged are unauthorized by the statute.

FEES OF OFFICERS.—Officers can only demand such fees as the law has fixed and authorized for the performance of their official duties.

ATTORNEYS' FEES—CONSTRUCTION OF STATUTE.—In construing the statute

approved March 5, 1875 (Stat. 1875, 42), relative to attorneys' fees in criminal cases: *Held*, that an attorney who defends a prisoner under appointment by the court, is entitled to a fee not exceeding fifty dollars for each trial of the cause, in whatever county the case may be tried, and an additional fee, not exceeding fifty dollars, if the case is followed into the supreme court.

ALLOWANCE OF FEES FOR SUMMONING JURY—WHEN PROPER.—The county from which a criminal case is transferred is liable for the fees of the sheriff in summoning a jury. upon a special venire for that particular case.

SHERIFFS' FEES—SUMMONING A JURY—MILEAGE.—When a venire is issued to a sheriff for thirty jurors, and he finds only twenty-four: *Held*, that he was entitled to his fees "for miles actually traveled in attempting to find and serve jurors whose names appeared upon the venire, but who could not be found and served."

IDEM—TAKING PRISONERS BEFORE COURT.—The sheriff is not entitled to any compensation for bringing the defendant into court during the trial.

IDEM—ATTENDANCE ON COURT.—The sheriff is entitled to five dollars for each day's attendance.  He cannot charge extra for a night session.

IDEM—SERVICE OF SUBPENA IN ANOTHER COUNTY.—The sheriff is not authorized by the statute to serve a subpena upon witnesses residing in any other county, except it is within the same judicial district.

CLERKS' FEES—JURORS' CERTIFICATES.—The clerk is not entitled to any fees from the county, for issuing time checks or certificates to each individual juror.

IDEM—MOTIONS AND ORDERS.—The clerk is only entitled to charge for such motions and orders as are properly entered in the records of the court.

JURORS' FEES—ATTENDANCE FIRST DAY.—The county from which a criminal cause is transferred is properly chargeable for one day's attendance of each juror present on the first day of the trial of the case.

REPORTERS' FEES.—Where the court is authorized to appoint a short-hand reporter, and there is no statute regulating his fees, he is entitled to a reasonable compensation for his services.

SURVEYORS' FEES.—Where it is necessary to have a survey of the premises where the crime was committed, in order to properly present the case to the jury, the county commissioners are authorized to allow a reasonable compensation for such survey.

VERIFICATION OF CLAIMS—UNAUDITED ACCOUNTS—JURISDICTION.—Where the expenses of a criminal trial have been properly audited in the county where the trial was had, it is unnecessary to have the same claims verified and presented as unaudited accounts to the commissioners of the county from which the cause was transferred.  [Beatty, J., dissenting.]

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts are stated in the opinion.

*George P. Harding, District Attorney of Humboldt County,* for Appellant.

I.  The treasurer of Washoe county had no authority to pay the witness fees.  The order for their payment was made by the judge instead of by the court.  (1 Comp. L., 2169.)

II.  The allowance of attorneys' fee for three hundred dollars was illegal.  (Stat. 1875, 142; *Rowe et al.* v. *Yuba Co.,* 17 Cal. 61.)

III.  County commissioners have no jurisdiction to examine, settle, or allow any accounts not legally chargeable against the county.  (2 Comp. L., 3077; *People ex rel. Raun et al.* v. *Supervisors of El Dorado Co.,* 11 Cal. 170; *Robinson* v. *Supervisors of Sacramento Co.,* 16 Id. 208; *Williams* v. *Bidleman,* 7 Nev. 68.)  Their action must appear to be in conformity with the provisions of the law creating and defining their powers and duties.  (*Finch* v. *Supervisors of Tehama Co.,* 29 Cal. 454; *Linden* v. *Case,* 46 Id. 171; *State* v. *Commissioners of Washoe Co.,* 5 Nev. 319; *Swift* v. *Commissioners of Ormsby Co.,* 6 Id. 97; *Hess* v. *Commissioners of Washoe Co.,* 6 Id. 109; *State* v. *C. P. R. R. Co.,* 9 Id. 79; 2 Comp. L., 3078, 3079, 3081, 3093, 3095; *Connor* v. *Morris,* 23 Cal. 447; *McCormick* v. *Tuolumne Co.,* 37 Id. 257; *Fox* v. *Supervisors,* 49 Id. 563; 37 Id. 193.)

*Robert M. Clarke,* for Respondent.

I.  The law makes the officials of plaintiff the agents for the defendant, and in the allowance and payment of all charges and expenses incurred substitutes the plaintiff for defendant, and plaintiff's allowance and payment is in legal effect the allowance and payment by defendant, and binds the defendant, and is conclusive upon it.  The authorities of the defendant have nothing to do with the allowance of the claims in the first instance.  The original claims are not to be submitted to it and can not be passed upon by it. If the officials of the plaintiff, acting within the scope of their authority, and having jurisdiction to act, have made mistakes or committed errors, such mistakes or errors can not be reviewed by the defendant or by the courts in this form of action.

*Wm. Cain, District Attorney of Washoe County*, also for Respondent.

By the Court, HAWLEY, J.:

The case of *The State* v. *Rover* (indicted for murder) was transferred from the county to Humboldt to the county of Washoe for trial. It was twice tried in Washoe county.

This action was commenced to recover the sum of three thousand six hundred and forty-five dollars and five cents, the amount of indebtedness alleged to have been legally incurred by Washoe county upon the trials of said case. It was tried before the court without a jury and a judgment was rendered in favor of Washoe county in the sum of three thousand five hundred and seventy-three dollars and twenty-five cents.

Several of the items objected to relate exclusively to alleged irregularities in the form and manner of the presentation and allowance of certain claims by the officers of respondent and it becomes material to ascertain, in advance, whether or not appellant can complain of such irregularities, if any exist.

By the transfer of the Rover case it became the duty of the respondent to act for appellant, and for all services rendered by any of its officers, or other parties, or costs incurred, relating to the trials of said case, the appellant became liable (1 Comp. Laws, 2300; *ex parte Taylor*, 4 Ind. 479), and it is not in a position to complain that the treasurer of respondent paid certain claims that were informally or irregularly presented to him for payment.

The material questions involved on this appeal are whether the accounts complained of were necessarily incurred during the trials of the Rover case and constitute legal charges against appellant, and not whether the treasurer of respondent could or should have objected to the payment of the same because certain orders for the payment of witness fees were indorsed upon the affidavits presented by the witnesses who were entitled to compensation, and were signed " S. H. Wright, District Judge," instead of " being spread upon the minutes of the court," as required by

statute (1 Comp. Laws, 2169, 2170), or because some of the other claims were not indorsed in the manner provided for by the statute.

But appellant is not bound to pay every claim because it was presented to, examined, allowed, and paid by the respondent. It had the right to show, if it could, that the services charged for were never in fact rendered, or that the fees charged were unauthorized by the statute.

There is a preliminary objection against the examination of any of the accounts complained of. There are no findings containing an itemized statement of the disallowed accounts.

In order to have the accounts reviewed by this court appellant ought to have asked for a specific finding as to the particular accounts allowed or disallowed by the district court. (*Young* v. *Clute*, 12 Nev. 37.)

This objection, however, was not urged by the respondent's counsel, and hence we shall proceed to examine and dispose of all the objections to such accounts as come within the rule above stated.

Prior to such examination it is proper to state, in general terms, that where the accounts depend solely upon the question whether the same are, or are not, reasonable, no argument has been advanced by appellant's counsel which, in our opinion, calls for any reduction of the amounts allowed by the county commissioners of Washoe county.

1. Attorneys' Fees. The language of the second section of the act entitled "An Act to provide for 'the payment of attorneys in certain cases," approved March 5, 1875 (Stat. 1875, 142), being ambiguous, it becomes our duty to determine the real intention of the legislature.

Section 1 provides that any attorney appointed by the court to defend a prisoner is entitled to "such fee as the court may fix, not to exceed fifty dollars."

Section 2 provides that the attorney so appointed can not "be compelled to follow a case to another county or into the supreme court." But if he does follow the case he "may recover an enlarged compensation, to be graduated on a scale corresponding to the prices allowed."

Now, if this section invests the court with discretionary

power in fixing the fees to take into consideration the inconvenience and expense resulting from the attorney's absence from his professional duties at home, then the allowances made in this case were reasonable and should not be disturbed.  But we are of opinion that it was not the intention of the legislature to invest the courts with any such discretionary power.

Without any action on the part of the legislature, it would be the duty of an attorney appointed by the court to defend the prisoner without any compensation.  (*Rowe* v. *Yuba County*, 17 Cal. 61; *Lamont* v. *Solano County*, 49 Cal. 158; *Samuels* v. *The County of Dubuque*, 13 Iowa, 536; *Johnston* v. *Lewis and Clarke County*, 2 Montana, 159; *Elam* v. *Johnson*, 48 Ga. 348.)

By the act in question, the legislature very properly made provision for some compensation, but expressly limited the amount to be allowed.  By the express terms of the act it is left optional with the attorney to follow the case to another county, or into the supreme court, or to refuse to do so.

We are of opinion that it was the intention of the legislature to provide for the payment of a fee, not exceeding fifty dollars, to every attorney who defends a prisoner charged with crime, under appointment from the court; that an attorney appointed to defend a prisoner charged with any of the offenses specified in section one is entitled to a fee, not exceeding fifty dollars, for defending the case in the county where the prisoner is indicted, and if, after the trial in that county, the cause is transferred to another county, and the attorney thus appointed voluntarily follows the case and defends the prisoner, he would be entitled to an additional compensation, not to exceed the sum of fifty dollars.  If the case was thereafter followed to the supreme court, the attorney would be entitled to a further compensation, not to exceed fifty dollars.  In other words, the attorney voluntarily following the case stands upon the same footing, so far as the fee is concerned, as any other attorney would who might be appointed by the court in the county to which the case is transferred.

Under the provisions of the statute, he has the right to follow the case and claim the enlarged compensation. If he refuses to follow the case, it would be the duty of the court to appoint some other attorney, who would be entitled to a fee not exceeding fifty dollars.

The only service, therefore, which the second section of the act performs is to give the attorney first appointed the privilege of following the case to another county, or into the supreme court, and claiming the enlarged compensation.

From this construction of the law it follows that Messrs. Bonnifield and Davies were each entitled to a fee, to be fixed by the court, in a sum not exceeding fifty dollars for each trial of the case in Washoe county. The amount allowed in excess thereof is unauthorized by the statute, and must be rejected.

The allowance of twenty-five dollars to T. W. W. Davies for arguing the motion in arrest of judgment is clearly erroneous. The court has no authority, under the provisions of the statute, to fix any fee, except for defending the case, which necessarily includes all the motions to be made therein.

2. Sheriffs' Fees. We are of opinion that the charges made by the sheriff for summoning jurors for the trial of Rover were properly allowed.

We agree with appellant's counsel that it ought not to be charged with the fees of the sheriff for summoning the regular panel of jurors for either term of the court when the Rover case was tried (unless it was the only case to be tried), but no valid reason can be urged why appellant should not be held liable for the sheriff's fees in serving any venire for additional jurors specially required for the trial of the Rover case, and it is only for such services that the charges were made. It is true that the venires did not upon their face purport to have been issued for the Rover case. The law, however, does not require the fact to be stated in any venire that it is issued or made returnable for any particular case. (1 Comp. L. 1054, 1055.) These facts can only be made to appear by the testimony of the officers

having personal knowledge of the same. From the testimony adduced upon the trial of this case, it does affirmatively appear that the additional venires (charged for) were issued specially for and on account of the Rover case. It might be claimed that the fees of the sheriff for such services are not necessarily costs taxable in any particular case. In a literal sense this is correct, but it must be borne in mind that in the ordinary administration of justice the charges for such services, being fixed by statute, must be paid by somebody. If the trials of Rover had occurred in Humboldt county, it would have been compelled to pay for such services, and in the absence of any express statute upon the subject, it affirmatively appearing to our satisfaction that the services were necessarily rendered on account of the Rover case, we think that these charges against the county of Humboldt were, as we have already stated, properly allowed. (*Shawnee County* v. *Wabaunsee County*, 4 Kansas, 312.)

The members of this court do not agree upon some of the questions concerning the allowance of the claim under discussion, but in the opinion of a majority, the mere fact that the record shows that some of the jurors named in the venire charged for were retained by the court for the trial of other causes at the same term, in which appellant had no interest, does not constitute a sufficient reason to induce the court to reject the claim as being an illegal or improper charge against the county of Humboldt.

On the second trial, the venire placed in the hands of the sheriff called for thirty jurors, and it is claimed that he is only entitled to charge for mileage for twenty-four. The record shows that he found only twenty-four jurors, that he traveled three hundred and ninety-seven miles in serving the twenty-four jurors, and thirty-seven additional miles were charged "for miles actually traveled in attempting to find and serve jurors whose names appeared upon the venire, but who could not be found and served."

The sheriff was entitled to fees and mileage for serving the twenty-four jurors, and in the event of the jurors living in different directions, the statute (Stat. 1875, 147) au-

thorizes the allowance of mileage whether the jurors named in the venire be found or not. The mileage in such cases is necessarily made in "serving such venire."

The charges made by the sheriff for taking the prisoner before the court were unauthorized by law and must be rejected. It is only in "bringing up a prisoner on *habeas corpus*" that a sheriff is entitled to any compensation for bringing a prisoner before the court. (Stat. 1875, 148.) The charges for attendance on the district court for "one day and night, ten dollars," must be reduced to five dollars each.

The fee bill authorizes the sheriff to charge five dollars for each day's attendance upon the court. He is entitled to the five dollars if he is only detained one minute, and he cannot charge any more if he is kept in attendance for the entire twenty-four hours.

No rule of law is better settled than the one under consideration, that an officer can only demand such fees as the law has fixed and authorized for the performance of his official duties. (*Board of Commissioners of Jay County* v. *Templer*, 34 Ind. 322; *Crittenden County* v. *Crump*, 25 Ark. 235; *Massing* v. *The State*, 14 Wis. 502; *The Town of Carlyle* v. *Sharp*, 51 Ills. 71; *Briggs* v. *City of Taunton*, 110 Mass. 423.)

In the opinion of a majority of the members of this court, the fees and mileage of the sheriff for the service of subpenas upon witnesses residing in Humboldt county ought not to have been allowed.

The statute only provides for the service of process by the sheriff within his county (2 Comp. Laws, 2956) except where another county is attached to the same judicial district. (2 Comp. Laws, 2967.) It provides that "a peace officer must serve within his county or district any subpena delivered to him for service." (1 Comp. Laws, 2167.) The district court had no authority to order the sheriff of Washoe county to serve the subpena in the county of Humboldt, that county not being within his judicial district. The statute compels witnesses from other counties to attend the place of trial whenever the judge of the court where the

cause is to be tried or a justice of the supreme court shall indorse on the subpena an order for the attendance of witnesses (1 Comp. Laws, 2171); but in such cases the service must be made in the manner pointed out by the other provisions of the statute which we have cited.

It is true, as was argued by respondent's counsel, that it is the duty of the sheriff of every county " to obey all lawful orders and directions of" the district court " in his county," and " to execute the process, writs, or warrants of courts of justice * * * when delivered to him for that purpose." (2 Comp. Laws, 2957.) But the officer is not required to obey any order which is not authorized by law, and although we are convinced that the court in the case under consideration acted in good faith in directing the sheriff of Washoe county to make the service, under the belief that it was actually necessary in order to promote the ends of justice, and that the sheriff also acted in good faith, believing it to be his duty to obey such order and direction of the court; yet we are not authorized to go behind the statute and allow this charge upon any such ground.

The county of Humboldt had the right to anticipate, when the Rover case was transferred, that in the trial of the case the county of Washoe would not incur any expense not authorized by law, and it can not and ought not to be held liable for any such charge or expense.

3. Clerks' Fees. The charges of the clerk for issuing " time checks " or certificates to each juror should not have been allowed. The statute makes it the duty of the clerk " to keep an accurate account of the attendance of each juror during the term of the court, and at the close of the term to ascertain the amount due each juror for mileage and attendance, after deducting the amount received by him as fees in civil cases." (Stat. 1875, 138.)

The object of the legislature in requiring the clerk to keep such a record was to enable the county commissioners to ascertain the amount to be paid each juror " from the general fund of the county." A general certificate from the clerk, for which he would be entitled to charge one dollar, would be all that is necessary to accomplish that purpose.

If any juror demanded a certificate of his time, attendance, and mileage, the clerk would, under the general fee bill, be authorized to charge him one dollar for the certificate; but he is not authorized to make any such charge against the county.

The clerk's charges for motions and orders entered and oaths administered are, in part, illegal.

The record shows " that the thirty motions and orders charged for by the clerk were actually made and entered in a memorandum book kept by the clerk in open court; but no more than eighteen of said numbers were ever actually entered in the regular court record;" that " the clerk actually administered forty-two oaths to the officers during the trial of the case, all of which appear upon his memorandum book kept in court, and only twenty-seven of which were ever formally entered in the regular court record."

We are of opinion that the records of the court are the best evidence to establish facts of this character.

The record is silent as to the character of the motions and orders entered in the memorandum book and not transcribed in the records of the court. They may or may not have been such motions and orders as would, if properly entered, have constituted legal charges.

There may be orders made by the judge during the progress of every trial that ought not to be entered in the record book. For instance, to cite extreme cases, the court might order a bystander to take off his hat or to be seated. He might order a witness to change his position, so that the court, jury or counsel could more distinctly hear his testimony. It would, however, be absurd to charge for such orders or to enter them in the record book. It is the duty of the clerk to keep a correct record of all the proceedings of the court legitimately pertaining to the trial of every case. It is the duty of the court to exercise a supervisory power over its own records and to see that the record book is not incumbered with improper or irrelevant matter.

The clerk is entitled to fifty cents for entering every motion, exception, rule, or order in the minutes of the court and is not entitled to any charge for the entry of such

motions or orders in the memorandum book kept by the clerk for his own convenience.

If the clerk omitted to keep a correct record of all the proceedings of the trial he certainly ought not to complain of the court for refusing to allow him any compensation for the non-performance of his official duties.

4. Jurors' Fees. The objections of appellant to the charges for one day's attendance of all the jurors present on the first day of each of the trials of the Rover case are not well taken. The jurors were required to be present in court at that time and were each entitled to a fee for such attendance, whether then discharged or not.

For the reasons previously stated in allowing the sheriff's fees for summoning the jury, we are satisfied that the court did not err in allowing the amount claimed for mileage and per diem of jurors.

5. Reporters' Fees. The court did not err in excluding the question asked of the witness Soderberg by appellant's counsel. It being admitted that the court was authorized to appoint a short-hand reporter, and there being no statute regulating his charges, the only material question to be determined was whether or not the amount claimed was reasonable.

6. Surveyors' Fees. The certificate given by the counsel for the state justifies the action of the board of county commissioners and of the district court in allowing the bill presented by the surveyor.

In order to establish the guilt of Rover, the state was compelled to rely, to a great extent, upon circumstantial evidence. Much depended upon the truth or falsity of Rover's own statement, made before a justice of the peace on his preliminary examination, declaring his innocence and charging the crime for which he was indicted upon the principal witness for the state. To determine that question, as well as some others, it became important to ascertain the exact distances between certain specified points and the relative positions of certain fixed objects, and of given localities at and near the scene of the homicide. If the statement of Rover was true, a correct map of the premises would ma-

terially assist the defense in establishing his innocence. If his testimony was false a correct map would materially assist the prosecution in establishing his guilt. Any important fact which tends to establish either the guilt or innocence of a human being upon trial for his life should always be procured, if within the reach of the court, and presented to the jury, regardless of the question of expense to the county.

The circumstances which surrounded the Rover case establish beyond all controversy the truth of the certificate given by the attorneys for the state, that the survey and map were absolutely necessary for the proper presentation of the case to the jury.

7. Finally, it is contended by appellant's counsel that respondent cannot maintain this action because the claim it presented to the county commissioners of Humboldt county was not verified as required by the statute. (2 Comp. L. 3093, 3094.) This argument is not well founded. The claim in question is not governed by the provisions of the statute referred to, but is controlled by the provisions of the criminal practice act. When a criminal action is removed to another county for trial, the costs accruing upon such removal and trial shall be a charge against the county in which the cause of indictment occurred. (1 Comp. L. 2300.)

The next section provides for the auditing of such claims by the county to which such action was removed.

The various items of the claim presented to the county commissioners of Humboldt county, with the exception of the witness fees, which are regulated by sections 544 and 545 (1 Comp. L. 2169, 2170), had been properly audited by the commissioners of Washoe county in the manner required by the statute. (*Ex parte Taylor*, 4 Ind. 479.) It is, therefore, evident that it was not the intention of the legislature to have claims of this character classed with the unaudited claims and accounts which are presented to the county commissioners in the ordinary transactions of county business, and provided for by the act defining the duties of county commissioners. (2 Comp. L. 3093, 3094.)

8. Modifications of Judgment. In accordance with the views expressed in this opinion, the following reductions must be made, viz.:

| | | |
|---|---:|---:|
| Attorney's fees | | $425 00 |
| Sheriff's fees—taking prisoner before court | $ 7 50 | |
| Sheriff's attendance on court ten night sessions | 50 00 | |
| Sheriff's mileage to Humboldt county for witnesses | 69 40 | |
| | | 126 90 |
| Clerk's fees—time checks to jurors | $49 00 | |
| Clerk's fees—motions and orders | 12 00 | |
| Clerk's fees—oaths to officers | 3 75 | |
| | | 64 75 |
| Total | | $616 65 |

As we have no means of ascertaining the particular accounts disallowed by the district judge, and have, therefore, been compelled to notice all the accounts objected to by appellant, the reduction must be made from the amount claimed in the complaint.

The judgment of the district court is modified by reducing the amount to three thousand and twenty-eight dollars and forty cents, and as so modified the judgment is affirmed.

BEATTY, C. J., dissenting:

I concur in the views of the court upon most of the points discussed in the foregoing opinion, but in some particulars I feel obliged to dissent, and especially from the conclusion reached upon the seventh point. In my opinion it is a fatal objection to respondent's right to recover, that its claim, as presented to Humboldt county, was never verified as required by law. "No person shall sue a county in any case for any demand, unless he or she shall first present his or her claim or demand to the board of county commissioners and county auditor for allowance and approval," etc. (C. L., sec. 3092.)

Of course, to satisfy this provision of the statute, the claim must be presented in such form as will authorize the board to allow it in case it is found to be legal and just. If the commissioners have no authority to allow an unverified claim, and it is presented without being verified, this, it will be conceded, is no compliance with the law, and the

rejection of the claim under such circumstances will not entitle the holder to sue the county. It is not, and it cannot be, denied that all unaudited claims must be "sworn to," in order to give the board of commissioners and county auditor any authority to audit and allow them (C. L., secs. 2993, 3093, 3094); but it is held by the court that the claim against Humboldt county was not an unaudited claim, within the meaning of the statute. Upon this point I differ with the court. It is true that the agregate of the sum claimed was made up of various other claims that had been audited and allowed by the commissioners of Washoe county, but it was, nevertheless, something new and logically distinct from those claims. It was a claim by a different party against a different party, and depending for its validity upon facts which the commissioners of Humboldt not only had the right to investigate, but which they were bound to investigate. The commissioners of Washoe audited the claims against that county, but they neither did nor could audit their own claim against Humboldt.

It is not denied—on the contrary, it is expressly conceded in the opinion of the court, that the audit in Washoe county was not binding upon Humboldt. It is there held that "appellant is not bound to pay every claim because it was presented to, examined, allowed, and paid by the respondent. It had the right to show, if it could, that the services charged for were never in fact rendered, or that the fees charged were unauthorized by the statute." Upon each of these grounds several considerable deductions are made from the amount of the judgment recovered in the district court. It appears to me that the decision upon this point is opposed to the conclusion that the claim against Humboldt county was ever audited in the sense of the statute—that is to say, examined and allowed by the commissioners and auditor. If the liability of Humboldt county depended upon the legality of the fees charged, and upon the fact that the services charged for had been actually rendered, it seems to follow necessarily that these were questions which the commissioners of Humboldt were bound to determine before they could allow the claim, and the examination of such

questions—that is, of all questions of law and fact upon which the validity of a claim depends—is what is meant by the statute when it speaks of the auditing of claims.

The sections of the criminal practice act, referred to by the court, do not, in my opinion, control or affect the manner of presenting claims of one county against another. By the first (C. L. 2300) the county from which a criminal cause is transferred is made liable for the costs; and by the second (C. L. 2301) it is provided that the claim for costs shall be allowed in the first instance, and paid by the county in which the trial is had. From this it results merely that the county of Washoe had a valid claim against Humboldt county for the costs of the Rover trials; but I can see no reason why it was not bound to present its claim as other unaudited claims must be presented. Confessedly, it was not payable as a matter of course. There were questions both of law and fact to be decided before the commissioners of Humboldt could determine what, if anything, was due, and the examination and decision of such questions is what the statute means by the auditing of claims.

For these reasons, I think the plaintiff should have been nonsuited, and that the judgment should have been reversed. I differ with the court also in regard to the charge for summoning the panel of jurors. The evidence, in my opinion, not only fails to show that any extra jurors were required or summoned for the first trial of Rover, but the contrary is conclusively proven. Rover's case stood first on the calendar, and was followed by a number of other cases, particularly by the case of *The State* v. *La Point.* It seems that thirty-one jurors had been summoned for the term. The court ordered an additional venire for ten more jurors, and made it returnable on the day that Rover's case was set for trial. This is the sole reason why the county clerk (not the judge, who alone could know), chose to charge the cost of the venire to the Rover case. But, manifestly, this of itself is no reason at all. Nothing is more natural than that the panel of jurors should be directed to attend on the day when the first issue of fact on the calendar is set for trial—it is, I presume, the universal practice—but no

one has ever supposed that it was therefore to be inferred that the cost of the venire was chargeable to that case. Still, it might be true, and if true it might be shown that an extra number of jurors was rendered necessary by the pendency of some particular case; but the burden of proving the fact would lie upon whoever asserted it. Here there is no proof that any extra jurors were required for the Rover case, but, on the contrary, it was proved and admitted that forty jurors were in attendance on the day it was set for trial; that of these only twenty were sworn on *voir dire* in order to obtain the trial jury; that the whole forty were kept for the trial of other cases, and that additional venires for a large number of jurors were issued specially for the La Point case. This shows that not only the panel of forty, but other additional jurors were required by Washoe county for its own purposes, and that the pendency of the Rover case put it to no expense on that account.

As to the second trial, the case is not so clear; but here again the opinion of the county clerk is all that the plaintiff could offer in support of its claim.

Upon another point, also, I dissent from the views of the court. The expenses of witnesses who attend upon a criminal trial from without the county must be allowed by the court, and the allowance must be evidenced by an order entered upon the minutes of the court. (C. L. 2169, 2170.) Upon the trial of this case, orders of the judge made out of court were admitted against defendant's objection to prove such allowances. I think the evidence was incompetent, and that it was error to admit it. The material question was not whether the witnesses had been paid by the treasurer of Washoe, but whether the allowances had been made. No one will pretend that any sum the treasurer chose to pay to the witnesses was recoverable from Humboldt county merely because he had paid it and the amount was not unreasonable. There must also have been an allowance by the proper authority, and if the statute requires, as it plainly does, that the allowance when made shall be evidenced by an order spread upon the minutes of the court, that evidence, and that alone, was admissible to prove the fact.

For these reasons, I think that if the respondent could recover anything, the amount of the judgment should be still further reduced than it has been by the order of the court.