CHARLES J. JOHNSON *et al.*

*v.*

WHITESIDE COUNTY.

*Filed at Ottawa May 19, 1884.*

1. COUNTY—ATTORNEY'S FEE—*where attorney defends a criminal by appointment of court.* An attorney at law appointed by the court to defend one on a trial of an indictment, who does defend, is not entitled to recover of the county in which the trial was had, any compensation for his services. An attorney takes his license with its burdens, among which is, to defend persons charged with crime when required by the court.

2. CRIMINAL LAW—*duty of court to assign counsel to prisoner.* Section 422 of the Criminal Code, making it the duty of the court to assign counsel to a person charged with crime when he is unable to employ one, conferred no new power, nor did it impose any additional duty. It but formulated the common law already in force.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Whiteside county; the Hon. JOHN V. EUSTACE, Judge, presiding.

Mr. C. C. JOHNSON, for the plaintiffs in error.

Mr. WALTER STAGER, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

At the August term, 1882, of the Whiteside circuit court, seven indictments were returned against four persons, for forgery. The accused were unable to employ counsel, and plaintiffs in error were, without their consent, appointed by the court to make their defence. The case against two of the accused was tried, plaintiffs in error appearing for them, and they were convicted, and the others pleaded guilty, and all were sentenced to the penitentiary. The judge who appointed plaintiffs in error to defend, gave them a writing

requesting the board of supervisors to allow and pay them $100, as compensation for such service. The board refused to make the allowance, and plaintiffs sued the county. On the trial of the case in the circuit court, judgment was rendered in favor of the county. The case was removed to the Appellate Court for the Second District. The judgment of the circuit court was affirmed, and the case is brought to this court, and a reversal is urged.

The only question presented by this record is, whether the county is liable for compensation to attorneys appointed by the court to defend persons indicted for crime, and who are unable to employ counsel for their defence. Under the ancient common law, persons accused of treason or felony were not permitted to defend, under the plea of not guilty, by counsel. The practice was, not to permit counsel to be heard on questions of fact, but the court would assign counsel to discuss questions of law arising on or after the trial. In such cases the prisoner proposed the point, and if the court supposed it would bear discussion, it assigned him counsel to argue it. (2 Hawkins' Pleas of the Crown, chap. 39, sec. 4, p. 555; 1 Chitty on Crim. Law, 407.) Thus it appears that at the common law the court exercised the power of assigning counsel to argue legal questions, and it seems counsel could only appear for that purpose after being assigned by the court. The Bill of Rights (or article 8, section 9,) of the constitution of 1818, provided, "that in all criminal prosecutions the accused hath a right to be heard by himself and counsel," and the constitution of the United States contains a similar provision regulating the practice in the Federal courts. This constitutional provision is retained in the present organic law, and modified the rigor of the common law by extending the privilege of the accused to be heard by counsel on both the facts and the law; but it still left the common law in force as to the power of the court to assign counsel, and is the present chapter 28 of the Revised Statutes of

1874, which has been in force since September 17, 1807. This State was then a part of Indiana Territory, the legislature of which adopted the provisions of chapter 28, adopting the common law in substantially the same language of the present law. In 1809 the Governor and judges of the Illinois Territory adopted the laws of Indiana, so far as they were not local to that territory. That law appears in Pope's Revision of 1815. The State legislature, in 1819, reënacted the law as it now stands, and it has so remained ever since.

Thus it is seen, under the common law, and the 9th section of article 8 of the constitution of 1818, the courts had the power, and it was their duty, to assign counsel to defend persons charged with crime, who were unable to employ counsel, and such has ever been the practice in this State. Nor has the power ever been questioned. Our criminal codes, from the earliest period of legislative history, have provided that trials for criminal offences shall be according to the course of the common law, except as otherwise provided. It then follows, that it was by express enactment that the common law should be in force as to this power, and was as binding as is the 422d section of the act of 1874, Rev. Stat. page 410. That section conferred no new power, nor did it impose any additional duty. It but formulated the common law then in force. It left the law in all respects as it was previously under the common law.

Under the common law, this court, in the case of *Vise* v. *Hamilton County*, 19 Ill. 78, held that when an attorney was thus assigned to defend a pauper prisoner, there was no law which rendered the county liable to compensate the attorney for his services. It was there said the county was not a party to the prosecution, and had no power to control the matter, nor did the county employ the attorney to perform the services; that the prosecution was carried on "in the name and by the authority of the People of the State of Illinois," and with it the county had no concern or power of interference,

and was under no obligation to furnish counsel for the accused. It was further said: "The law confers on licensed attorneys rights and privileges, and with them imposes duties and obligations, which must be reciprocally enjoyed and performed. The plaintiffs but performed an official duty, for which no compensation is provided. *Edgar County* v. *Mayo,* 3 Gilm. 82." That case is conclusive of this.

It, however, seems to be supposed that because the legislature has declared, in terms, the duty previously imposed by the common law, there is a change of legislative intention, and that we must infer it was intended to render the county liable. We are wholly unable to see such a purpose. Substantially there was no change in the law. Counties are only liable for the expense of apprehending, keeping and prosecuting persons accused of crime, by force of statute, or the common law as adopted by the statute. There is no statute or rule of the common law that imposes the duty of paying attorney's fees for defending paupers from criminal accusations, and the courts have no power to enact laws authorizing counties to levy taxes for such purposes. The taxing power is a legislative, and not a judicial, function, and it would be a palpable violation of the constitution for the courts to usurp the power. The courts, no doubt, have the power, in proper cases, to compel counties to exercise the taxing power, where it has been conferred on them by the legislature; but they are destitute of power to compel them to levy and collect a tax not authorized by the statute. Plaintiffs in error are presumed to have known, when they applied for a license, that the office was burthened with this duty, and they must be held to have accepted the place subject to the burthen. The legislature had the power, in conferring such privileges, to impose duties and obligations such as it might choose. Plaintiffs in error voluntarily accepted the privileges with this obligation, and they must be held to its performance. This being so, there is no pretense that the law deprives them

of their property or labor without compensation. They received a compensation in the privileges conferred by their licenses.

This doctrine is announced in the cases of *Wayne County* v. *Waller,* 90 Pa. St. 99, and *Rowe* v. *Yuba County,* 17 Cal. 61. We are aware that in Iowa, Indiana and Wisconsin the courts have reached a different conclusion; but we are not disposed to overrule our former decision. To do so would not produce harmony in the decisions. Moreover, we are satisfied that we have announced the true rule in *Vise* v. *Hamilton County, supra.* If a correction is required it is at the hands of the legislature, and when that body sees proper it will afford the remedy.

Perceiving no error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*