| 43 | 991 |
| 44 | 786 |
| 43 | 991 |
| 47 | 1094 |
| 43 | 991 |
| 104 | 585 |
| 43 | 991 |
| 106 | 662 |
| 43 | 991 |
| 115 | 943 |
| 43 | 991 |
| e121 | 804 |

## No. 295.

### THE STATE OF LOUISIANA vs. GUS SIMMONS.

1. Motion to quash an indictment on a challenge to the general venire, based on alleged irregularities in the manner of drawing and summoning the jurors, is properly demurrable when it alleges neither fraud, wrong nor injury.
2. In absence of express statutory authority, the fees of counsel, acting as counsel for accused, in obedience to an assignment by the court, can not be taxed as costs to be paid by the parish.

A PPEAL from the Tenth District Court, Parish of De Soto.
*Hall, J.*

---

*Absent during this term.

State vs. Simmons.

*J. Henry Shepherd*, District Attorney, for the State, Appellee:

1. In all criminal prosecutions the accused shall enjoy the right to defend himself and have the assistance of counsel. Art. 8 Const.
   Where the accused can not employ counsel, the judge should assign one. State vs. Doyle, 36 An. 91; State vs. Viana, 37 An. 606; State vs. Simpson, 38 An. 23·

2. Courts can require lawyers to act as counsel in cases where the accused are unable to pay, on the ground that they are officers of the court, bound to perform official duties, for they are a necessary part of the administration of justice. Bishop on Cr. Pr., Vol. 1, p. 305.

3. The State as a sovereign owes no costs in litigation before her own courts, even when cast in a civil suit. State vs. Taylor, 33 An. 1272; 34 An. 978; Succession of Kate Townsend, 40 An. 66.

4. No irregularity in drawing, summoning, returning or impanelling grand or trial jurors furnishes ground for challenging the array, or is sufficient to set aside a verdict unless it operated to the injury of the party complaining. Thompson & Mer. Jur. 63, 148; State vs. Harris, 34 An. 118; State vs. Rector, 35 An. 1098; State vs. Sandez, 37 An. 376; State vs. Gonsoulin, 38 An. 459.

5. All objections to the manner of drawing juries or any defect or irregularity that can be pleaded against any array or venire must be urged on the first day of the term. Acts 1877, Sec. 11 of Act 44; State vs. Price, 37 An. 215.

*E. W. Sutherlin* and *J. W. Parsons* for Defendant and Appellant:

1. Section 11 of Act 44 of 1877 requires that all objections to the manner of drawing juries must be urged on the first day of the term; but the letter of the statute can not be rigidly enforced in all instances, when circumstances render it impossible to do so. Where the term of court begins on the 3d, and is adjourned to the 6th, when the indictment is presented and counsel assigned, the accused being in jail and unable to employ counsel, a motion to quash indictment and challenge to the venire, made on the 7th, before arraignment, is seasonably made. 19 An. 436; 31 An. 387, 398; 41 An. 513, 679.

2. The venire must be drawn in accordance with Sec. 4 of Act 44 of 1877, p. 56. 29 An. 824; 20 An. 356, 442.

3. The fees of counsel assigned by the court for the defense of an accused, unable to employ counsel, like all other expenses attending criminal proceedings, must be paid by the respective parishes, and taxed as costs. This view is supported by precedent and sound public policy. The assignment of counsel is indispensable to the trial, and "as essential to the due examination of the case as counsel for the prosecution, and to leave the services of the one unremunerated is as impolitic as it would be to leave the services of the other unremunerated." Const., Art. 8; Revised Statutes, Secs. 992, 1042; 25 An. 381; 33 An. 979; 36 An. 91; 37 An. 267, 606; 38 An. 23; Bishop's Criminal Procedure, Vol. 1, 3d Ed., Secs. 304, 305, 306; Whar. Cr. Pl. and Pr., Secs. 557, 558, 559.

The opinion of the court was delivered by

FENNER, J. The defendant, convicted of murder and sentenced to be hung, assigns but one complaint of error in the proceedings,

which consists in the overruling of his motion to quash the indictment based upon a challenge to the general *venire*. His objections to the *venire* are stated as follows:

"Neither the clerk of this court nor the jury commissioners have ever made or kept a list of the names of three hundred good and competent men from which the venire for each term of the court is by law required to be drawn, nor has any such list ever been kept complete and supplemented from time to time by said clerk or jury commissioners, as required by law; and that the pretended list kept by the clerk of the court was not kept and maintained at the original standard of three hundred, as required by law; nor have the names of those who have served, nor of those who are known to have died, removed from the parish or become exempt or disqualified to serve as jurors since their names were entered thereon, been stricken therefrom; but that the pretended list from which the venire for this term of court were drawn contained the names of more than one thousand persons, many of whom had previously served, and who are known to have died and removed from the parish and become exempt or disqualified from jury service."

The motion to quash was met by a demurrer on two grounds, viz.:

1. That the challenge to the array was not pleaded on the first day of the term, as required by Section 11 of the Act 44 of 1877.

2. That the motion made no averment of fraud, or great wrong, or of injury to defendant.

The trial judge sustained the demurrer.

The letter of the statute is very peremptory that all objections to the array or venire " must be urged on the first day of the term, or all such objections shall be considered as waived and shall not afterward be urged." We have, however, held that the statute does not require impossibilities, and have recognized certain cases to which it could not be applied. State vs. Sterling, 41 An. 680; State vs. Strickland, *Id.* 513; State vs. Vance, 31 An. 398.

The defendant here urges certain circumstances as bringing his case within a necessary exception to the statute, the sufficiency of which, however, we need not presently consider, because we hold the second ground of demurrer to be conclusive.

The same statute which directs the methods to be pursued in the drawing of juries, specifically provides that " no such defect or

irregularity in the drawing thereof or the summoning of the jury shall be sufficient cause (to challenge the venire), if it shall not appear that some fraud has been practised, or some great wrong committed, that would work a great and irreparable injury."   .

We have uniformly enforced this requirement of the statute. State vs. Gonsoulin, 38 An. 459; State vs. Sandoz, 37 An. 376; State vs. Rector, 35 An. 1098; State vs. Harris, 34 An. 118; State vs. Dozier, 33 An. 1362; State vs. Smith, *Id.* 1414.

We find every inducement to adhere to this line of decisions. The inconvenience and delay occasioned to the administration of criminal justice by the setting aside of the venire, are too grave to be lightly incurred on account of irregularities, which have arisen from no fraud and resulted in no injury. There is no suggestion that the fifty names drawn from the general venire box to compose the grand and petit jurors for the first week of the term were not good, true and qualified jurors, or that the grand jury selected from said number and which found the indictment against defendant, was not composed of qualified jurors, honest and impartial. What more does justice require? Defendant has alleged neither fraud nor injury, and, therefore, the statute and jurisprudence silence his complaint.

The attempt to assimilate these irregularities in the proceedings of a qualified jury commission, to disqualifications of the commission itself, is not sound. The curative effect of the statute applies only to defects or irregularities in the proceedings of the commission, not to defects in the constitution of the commission; and, therefore, in the latter case, allegation and proof of specific fraud or injury are not required.

### I.

The defendant, in this case, being unable to employ counsel, the attorneys, |who represent him, acted under assignment by the court. They took a rule to have their fees taxed as costs of the case to be paid by the parish. The judge denied the rule, and from his judgment the attorneys have appealed.

We can find no warrant for the relief asked. There is certainly no precedent for it in this State. The subject is referred to by Bishop and Wharton. First Bishop, Cr. Prac. Sec. 304, *et seq.;* Wharton, Cr. Pl. and Pr., Sec. 558, *et seq.*

They cite an Irish case, in which the Chief Baron said, in a case of

such service, "that he should certainly recommend that the fee should be paid by the crown." It also appears that in some States of the Union civil actions have been maintained against counties for remuneration for such services. They refer to no case in which such fees have ever been taxed as costs in criminal proceedings, in absence of express statutory authority. It would be manifestly unjust to do so, because the parish is not a party to a criminal case, and is certainly entitled to be heard on such a demand.

There is no such statutory authority in this State. It is true, that Section 1042, Revised Statutes, provides that "all expenses whatever attending criminal proceedings shall be paid by the respective parishes;" but no statute includes such attorney's fees amongst those expenses. On the contrary, Act No. 7 of 1887, entitled "an act to regulate and limit the liability of parishes of this State for costs and fees in criminal proceedings," makes no reference to such fees and impliedly excludes them.

The better doctrine seems to be that followed in Massachusetts, Illinois, California, Pennsylvania, Georgia, Alabama, Arkansas and Montana, where, as stated by Mr. Bishop, the county is held not liable, unless made so by particular statute. We shall adopt and follow this rule until the Legislature shall otherwise direct.

Judgments affirmed.