41661. WEINER v. FULTON COUNTY et al.
41662. BROWN v. THE STATE.

344

Argued January 5, 1966—Decided February 11, 1966—
Rehearing denied March 16, 1966—

Beryl H. Weiner, Roy J. Leite, Jr., for appellant (Case No. 41661).

Harold Sheats, John Tye Ferguson, for appellee.

Beryl H. Weiner, for appellant (Case No. 41662).

Lewis R. Slaton, Solicitor General, J. Walter LeCraw, for appellee.

DEEN, Judge. ■ The right to follow a profession, which of course includes the right to be compensated for services rendered, is a property right. Muse v. Connell, 62 Ga. App. 296, 303 (8 SE2d 100) ; Weatherby v. Pittman, 24 Ga. App. 452 (101 SE 131). Specifically, the right to practice law has been held to be a property right within the meaning of the due process and equal protection provisions of the Fourteenth Amendment to the Constitution of the United States. Schware v. Board of Bar Examiners, 353 U.S. 232 (77 SC 752, 1 LE2d 796) ; Konigsberg v. State Bar of California, 353 U.S. 252 (77 SC 722, 1 LE2d 810). From this it follows that an attorney from whom services are demanded and by whom they are given has a property right in his fee for those services, which may be set by contract, or, if not, should be based on their just and reasonable value. In United States v. Dillon, 346 F2d 633, it was pointed out that a court might issue a valid order compelling a lawyer to represent an indigent. "Our courts have uniformly adopted the practice of assigning counsel to represent indigent criminals in all cases when they were unable to employ counsel to represent them." Delk v. State, 99 Ga. 667 (26 SE 752). "The right of a person accused of a felony to the aid of counsel at all critical stages of criminal proceedings, before trial, and to prosecute an appeal provided by State law, is fundamental and must be protected by the State. . . . It is not inconceivable that the idea embodied in our Constitutions, that every defendant shall stand equal before the

law, might be held to require, and would certainly permit, that a criminal defendant be furnished assistance to procure evidence reasonably obtainable for his defense, including when needed an examination by a competent and disinterested expert to give testimony," etc. *Roach v. State,* 111 Ga. App. 114, 116 (140 SE2d 919). It has never been thought that in such a case services of experts or others necessary to the production of such evidence could be commandeered, or that they could be forced to give of their time and means for the benefit of the indigent defendant without recompense. "It is clear that the law does not contemplate that a person who is not a party to the case and who has no interest therein shall be compelled by any process to expend his time and money in travel, for the purpose of giving testimony or evidence of others, without being compensated for such time and expense. Indeed, to thus take one's time and expense of travel without compensating therefor would constitute taking of property without due process, and when taken by the State or its agency would be for public use without paying therefor, in violation of provisions of the State Constitution." *Dickerson v. Mangham,* 194 Ga. 466, 471 (22 SE2d 88). The right of the sovereign in the property of the citizen is hedged by two fundamental safeguards—the taking must be for a public purpose, and it must be attended by just and adequate compensation. Art. I, Sec. III, Par. I, Constitution of Georgia (*Code Ann.* § 2-301). This includes *every species of property* in which the individual has a right of ownership, whether real or personal, corporeal or incorporeal. *Bowers v. Fulton County,* 221 Ga. 731 (146 SE2d 884). The incidental expenses of the attorney in this case as well as the value of his time unquestionably constitute a property right within the meaning of *Bowers,* (see also Armstrong v. U.S., 364 U.S. 40 (80 SC 1563, 4 LE2d 1554)), nor can there be any question but that the purpose is a public purpose. The proper functioning of the judicial system is an integral part of government; the mandate of Gideon v. Wainwright, 372 U.S. 335 (83 SC 792, 9 LE2d 799); Escobedo v. Illinois, 378 U.S. 478 (84 SC 1758, 12 LE2d 977), and other cases making applicable to the various states the mandate of the Sixth Amendment of our Bill

of Rights that every accused in a criminal prosecution has the right to the assistance of counsel for his defense at every critical stage of the case as an essential component of due process in a trial in a state court compels every agency of government concerned with the operation of the courts to acknowledge the necessity for and implement the means by which this necessary public purpose must be accomplished. The provisions of our own Constitution make the same demand. "While Georgia has no statute requiring the appointment of counsel for an accused unable to employ his own counsel, this court has construed the constitutional provision that every person charged with an offense shall have the privilege and benefit of counsel to mean that, if said accused is not financially able to employ counsel and desires the court to appoint one to represent him, the court must do so, and failure to do so violates his constitutional right to benefit of counsel." *Bibb County v. Hancock,* 211 Ga. 429, 436 (86 SE2d 511). There is thus a public necessity and a public purpose; there is a demand by the sovereign and compliance by the citizen, and there is in all practical effect a taking of the property of that citizen, or, better stated, of a limited class of citizens, forcing them "alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. U.S., supra, p. 49.

■ In spite of these facts, the matter has been considered by the following State and Federal appellate courts and a decision reached that no compensable taking has resulted. U.S. v. Dillon, 346 F.2d 633, reversing Dillon v. U.S., 230 F.Supp. 487; *California:* Lamont v. Solano County, 49 Cal. 158 (1874) ; Rowe v. Yuba County, 17 Cal. 62 (1860, Field, J.) ; *Illinois:* Vise v. County of Hamilton, 19 Ill. 78 (1857) ; Johnson v. Whiteside County, 110 Ill. 22 (1884) ; *Kansas:* Case v. Board of Commissioners of Shawnee County, 4 Kan. 511 (1868) ; *Louisiana:* State v. Simmons, 43 La. Ann. 991 (10 S 382) (1891) ; *Michigan:* Bacon v. County of Wayne, 1 Mich. 461 (1850) ; *Mississippi:* Dismukes v. Board of Supervisors, 58 Miss. 612 (1881) ; *Missouri:* Kelly v. Andrew County, 43 Mo. 338 (1869) ; *Montana:* Johnston v. Lewis & Clarke County, 2 Mont. 159 (1874) ; *Nevada:* Washoe County v. Humboldt County, 14 Nev. 123, 128

348

(1879); *New Jersey:* State v. Rush, 87 N.J. Super. 49 (207 A2d 724) (1965); *New York:* Whedon v. Board of Supervisors, 192 App. Div. 705 (183 NYS 438) (3d Dept. 1920); Ransom v. Board of Supervisors, 78 N.Y. 622 (1879); *Pennsylvania:* Wayne County v. Waller, 90 Pa. 99 (1879); *Tennessee:* House v. Whitis, 64 Tenn. (5 Baxt.) 690, 692 (1875); *United States:* Nabb v. U.S., 1 Ct. Cl. 173 (1863); *Utah:* Parde v. Salt Lake County, 39 Utah 482 (118 P 122, 36 LRA(NS) 377) (1911); Ruckenbrod v. Millins, 102 Utah 548 (133 P2d 325, 144 ALR 839) (1943).

*Code* § 9-601 provides: "It is the duty of attorneys at law . . . (6) Never to reject, for a consideration personal to themselves, the cause of the defenseless or oppressed." Indubitably, this case must be controlled by the interpretation placed on this statute by the Supreme Court of Georgia in *Elam v. Johnson,* 48 Ga. 348, 350: "This, too, is an old common law duty, and has been not only the admitted *obligation* but the pride and glory of the profession from time immemorial. The law recognizes the profession and the office. As it confers privileges, it also imposes duties. One of these is that he will never reject the cause of the defenseless, and that when the presiding Judge of a Court (at which he is in attendance)—the head of his profession for the time—presents to his notice a case coming within the sphere of his obligation, he will, in good faith as a man and as a lawyer, come to his aid. If he fail, he fails in his *professional* obligations." Dillon, too, hinged in part on the notion that there is no compensable taking when the attorney "performs an obligation imposed upon him by the ancient traditions of his profession and as an officer assisting the courts in the administration of justice."

We incline to the proposition that lawyers undertake certain professional obligations over and above those demanded of some of the other professions, among them being never to reject, for a consideration personal to themselves, the cause of the defenseless. We also incline to believe that a lawyer, except in unusual circumstances, has no right and will make no effort to refuse a case which he is requested to take by a judge of the court before whom he regularly appears, and that such request is tantamount to a demand. While, therefore, the amount of

compensation for the work he does may be shaded by the first of these considerations, compliance which not only deprives him of a considerable portion of his working time but leaves him financially in worse condition through enforced expenditures of personal funds may, under the second, amount to confiscation. To this extent, under prevailing conditions which result in ever increasing demands for uncompensated service, we are fully cognizant that an undue burden is placed on the legal profession as a matter of custom, and that this burden is itself borne unequally by members of the profession in practice; that the glory of service dims in inverse proportion to the demands made upon the time of an individual attorney, and that the very able young attorney who has presented this issue so squarely and forthrightly speaks not for himself but in the name of justice for all members of his profession and ours. These cases were originally appealed to the Supreme Court and by that court transferred to the Court of Appeals, thus eliminating from consideration any constitutional question. It may be that the matter is one for legislative rather than judicial determination, since a number of other questions are involved which it is unnecessary to decide here, among them the question of whether a county is suable in such a cause of action in any event. The matter is one of utmost importance to the proper functioning of government, and we know as citizens, if we cannot take judicial notice as a court, that the present session of the legislature is giving earnest attention to possible methods of meeting due process standards without undue hardship on the profession. The problem is vital in view of the geometrically increasing velocity of the necessary demands on the time and work product of practicing lawyers, and it is with regret that the court finds it not within its own jurisdiction to offer a solution.

The court did not err in dismissing the petitions in both cases.

*Judgments affirmed. Nichols, P. J., concurs. Hall, J., concurs specially.*

HALL, Judge, concurring specially. While I concur in the judgment under the ruling in *Elam v. Johnson,* 48 Ga. 348, 350, I reject Division 1, which is dictum, and much of the dictum in

Division 2 for the reason that much of what is said attempts to place the legal profession on the same level as trade unions.

In Division 1, the majority opinion comes to an advisory conclusion that a request by a court that an attorney represent an indigent defendant in a criminal case amounts to a "taking" for public purposes of his property rights. This conclusion is, to the best of my knowledge, not supported by any common law authority in the English speaking world.

"Historically, the practice of law is a profession. It must remain a profession if the purposes of representation in litigation as part of the machinery of justice are to be achieved. A profession is a group of men pursuing a learned art as a common calling in the spirit of public service—no less a public service because incidentally it may be a means of livelihood. The exigencies of the economic order require most persons to gain a livelihood and the gaining of a livelihood is a purpose to which they are constrained to devote their activities. But while in all walks of life men must bear this in mind, in business and trade it is the primary purpose. In a profession, on the other hand, it is an incidental purpose, pursuit of which is held down by traditions of a chief purpose to which the organized activities of those pursuing the calling are to be directed primarily and by which the individual activities of the practitioner are to be restrained and guided." 5 Pound, Jurisprudence 676, 677 (1959). The legal profession exists primarily for the advancement of justice. "The best service of the professional man is often rendered for no equivalent or for a trifling equivalent and it is his pride to do what he does in a way worthy of his profession even if done with no expectation of reward. This spirit of public service in which the profession of law is and ought to be exercised is a prerequisite of sound administration of justice according to law." Pound, The Lawyer From Antiquity to Modern Times 10 (1953).

"Representation of indigents is a traditional professional obligation of the bar, which a lawyer undertakes when he becomes a member of the bar. There is thus no 'taking' when a lawyer is required to fulfill that obligation . . . An applicant for admission to the bar may justly be deemed to be

aware of the traditions of the profession which he is joining, . . . Thus the lawyer has consented to and assumed this obligation, and when he is called upon to fulfill it he cannot contend that there is a taking." U.S. v. Dillon, 346 F.2d 633, 636, 638 (1965). The Dillon case cites *Elam v. Johnson*, 48 Ga. 348, 350 along with a vast number of other authorities.

The solution to the problem lies not in an action of this sort but, in a thorough policy and practical study and evaluation of our assigned counsel system in its entirety, with participation by all interested groups—bench, bar, legislature and the public. Out of such a study should come, hopefully, a system of providing defense for the indigent which will safeguard the rights of all by providing reasonable compensation for those charged with such defense.