117 N.J. Super. 296 (1971)
284 A.2d 395
STATE OF NEW JERSEY, PLAINTIFF,
v.
JANET COREY, DEFENDANT. IN THE MATTER OF THE CONTEMPT OF ESTHER S. FRANKEL, AN ATTORNEY AT LAW OF THE STATE OF NEW JERSEY.
Superior Court of New Jersey, Passaic County Court, Law Division.
Decided November 29, 1971.
*297 Mr. Leopold Frankel attorney for appellant Esther S. Frankel.
Mr. Sherman T. Brewer, Jr., Deputy Attorney General, for respondent (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney; Mr. Elias Abelson, Assistant Attorney General of counsel; Mr. Sherman T. Brewer, Jr. Deputy Attorney General, on the brief).
DUFFY, J.C.C.
Esther S. Frankel, an attorney at law of New Jersey, appeals pursuant to N.J.S.A. 2A:10-1 (c) and R. 1:10-1 from an adjudication of contempt of court entered July 6, 1971 in the Paterson Municipal Court. She *298 was fined $50, payment of which was stayed by the municipal judge pending the outcome of an appeal.
On July 6, 1971 one Janet Corey was charged with a violation of N.J.S.A. 2A:170-4. Upon interrogation the court was unable to elicit any information from her and thereupon assigned appellant as counsel. Appellant refused to accept the assignment and expressly waived the opportunity for a 24-hour cooling-off period to reconsider her position, as directed in In re Logan, Jr., 52 N.J. 475 (1968). She was thereupon adjudged guilty of contempt of court and fined $50.
Succinctly stated, the issue on this de novo appeal on the transcript is "whether the refusal of an attorney to accept appointment as counsel for an indigent accused, defendant or appellant, * * * constitutes contempt of court." Annotation, "Attorney's Refusal To Accept Appointment To Defend Indigent, Or To Proceed In Such Defense, As Contempt." 36 A.L.R.3d 1221 (1971).
On May 10, 1971, in the cases of Rodriguez v. Rosenblatt and State v. Conley, 58 N.J. 281 (1971), the Supreme Court decided that,
Indeed, whenever the particular nature of the charge is such that imprisonment in fact or other consequence of magnitude is actually threatened or is a likelihood on conviction, the indigent defendant should have counsel assigned to him unless he chooses to proceed pro se with his plea of guilty or his defense at trial. In those rare instances where there is a plea or a trial proceeds without any tender or assignment of counsel and actual imprisonment or other consequence of magnitude looms appropriate to the municipal judge despite the predications to the contrary, the defendant should be given the option of starting anew with suitable safeguards including where necessary, [sic] trial before a substituted municipal judge. [at 295]
On the basis of the above decision an administrative order was issued to all assignment and municipal court judges on May 12, 1971 concerning the assignment of counsel without compensation in municipal court for indigent defendants when the nature of the charge falls within the guidelines of the Rodriguez and Conley case.
*299 In short, the order called for establishment of a list of attorneys for each municipal court, from which counsel could be assigned by the judges as necessity dictated. Until the list was prepared judges could assign counsel on an ad hoc basis. Furthermore, the order observed that no provision presently exists in the opinion, court rules, or statutes to authorize compensation for assigned counsel.
N.J.S.A. 2A:10-1 directs that,
The power of any court of this state to punish for contempt shall not be construed to extend to any case except the * * * (c) Disobedience or resistance by any court officer, or by any party, juror, witness or any person whatsoever to any lawful writ, process, judgment, order, or command of the court.
Appellant alleges that the conviction for contempt was inappropriate because the refusal to accept the assignment did not result in an obstruction of justice.
In Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), a case involving the right to counsel, the court said (at 73, 53 S.Ct. at 65), "Attorneys are officers of the court, and are bound to render service when required by such an appointment."
The act herein alleged to constitute contempt was the deliberate refusal of Esther Frankel to accept a defense appointment as directed by a lawful court order.
A contempt of court has been defined as a disobedience to the court by acting in opposition to its authority, justice and dignity. Generally speaking, he whose conduct tends to bring the authority and administration of the law into disrepute or disregard, interferes with or prejudices parties during litigation, or otherwise tends to impede, embarrass, or obstruct the court in the discharge of its duties is guilty of contempt. [In re Bozorth, 38 N.J. Super. 184, 188 (Ch. Div. 1955)]
Likewise, any willful violation of a court order may itself be contempt. State v. Cary, 49 N.J. 343 (1967).
Unquestionably, Esther Frankel deliberately refused to accept assignment, albeit with good motive, thereby disruptting the court procedure. Her refusal obstructed justice in *300 such a way that the court was prohibited from disposing of State v. Janet Corey with expedience and fairness to all concerned. One can only estimate the frustration of the Supreme Court's will as enunciated in Rodriguez and Conley if all attorneys could deliberately refuse an assignment.
Doubt of the validity of an order is no justification for noncompliance unless the court issuing it was in fact without jurisdiction. Salmon v. Salmon, 88 N.J. Super. 291 (App. Div. 1965). Resistance in the face of a court order to act as counsel without compensation was not the means to test the validity of the order.
If the person to whom a court order is directed wishes to test its validity before complying with it, the appellate courts are open to him. Otherwise, he must obey it. No other rule is compatible either with the dignity of the courts or the effective prosecution of their business. [Roselle v. Moonachie 48 N.J. Super. 17, 25 (App. Div. 1957)]
Rather than refuse assignment and obstruct justice, appellant could, after representing the indigent, raise the issue of compensation by an application to the court, as was done in State v. Rush, 46 N.J. 399 (1966), and State in Interest of Antini, Jr., 53 N.J. 488 (1969).
Notwithstanding appellant's desire to formulate a "test case," her motivation does not excuse a deliberate contempt of court. In re Carton, 48 N.J. 9 (1966), an attorney was held in contempt for refusal to obey a court direction to sign a pretrial order. The court said (at 25) that "Good motive of course does not excuse a willful disobedience, but it may be considered in deciding whether a public purpose would be served by a prosecution for contempt." See also In re Brown, Jr., 50 N.J. 435 (1967).
Next, appellant alleges that the assignment of counsel in municipal court without compensation violates the constitutional rights of an attorney. In particular, she asserts the violation of her First Amendment right to dissent, her Thirteenth Amendment freedom from involuntary servitude, and her Fifth and Fourteenth Amendment prohibitions *301 against taking of property without due process of law or adequate compensation.
In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the court found that the Federal Constitution requires the state to furnish counsel to an indigent accused of crime.
The majority of the courts faced with the issue have held that in the absence of statutes, an attorney appointed by the court to represent an indigent accused has no right to compensation by the public, and such denial does not violate any provision of the Federal Constitution. [Annotation, "Right of Attorney Appointed by Court for Indigent Accused to and Court's Power to Award Compensation by Public. In Absence of Statute or Court Rule," 21 A.L.R.3d 819, 821 (1968)]
Since Gideon the constitutional right to counsel has been extended to indigent juveniles when the possibility of commitment exists. In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Whether a constitutional right to counsel in petty offenses exists has never been decided by the United States Supreme Court or the New Jersey Supreme Court. See In re Garofone, 42 N.J. 244 (1964).
In New Jersey, prior to State v. Rush, supra, attorneys received compensation only in murder cases. N.J.S.A. 2A:163-1. Basing its decision on N.J.S.A. 2A:158-7, the court in Rush held that the bar would no longer absorb the full cost of defending the indigent and directed that reasonable compensation be paid by each county to assigned attorneys. Later, in 1969, the Supreme Court extended compensation to attorneys for indigent juveniles, reasoning that since In re Gault, supra, the obligation to furnish counsel to the indigent juvenile in danger of commitment has become a constitutional and public one, to be covered by the Public Defender. State in Interest of Antini, Jr., supra.
In the case of Rodriguez v. Rosenblatt and State v. Conley, supra, the court found that not as a constitutional *302 right, "but, as a matter of simple justice, no indigent defendant should be subjected to a conviction entailing imprisonment in fact or other consequence of magnitude without first having had due and fair opportunity to have counsel assigned without cost." 58 N.J., at 295.
The identical issues raised herein, alleging a violation of the constitutional rights of a lawyer, were answered in the negative in United States v. Dillon, 346 F.2d 633 (9 Cir.1965), and Dolan v. United States, 351 F.2d 671 (5 Cir.1965).
Any right to compensation is purely statutory, and a system of compensation for appointed counsel, in the light of the developing law of the rights of indigents, is a matter for legislative, not judicial treatment. United States v. Dillon, supra. At present there is no statute or court rule in New Jersey which can be cited as authority for directing compensation to attorneys assigned in municipal court. Thus, the attorney must render gratuitous assistance pursuant to his common law obligation and tradition as an officer of the court and as a condition of his license to practice law. State v. Horton, 34 N.J. 518 (1961); State v. Clifton, 247 La. 495, 172 So. 2d 657 (Sup. Ct. 1965); Warner v. Commonwealth, 400 S.W.2d 209 (Ky. Ct. App. 1966), cert. den. 385 U.S. 858, 87 S.Ct. 108, 17 L.Ed.2d 85, 1966); Jackson v. State, 413 P.2d 488 (Alaska Sup. Ct. 1966); Weiner v. Fulton County, 113 Ga. App. 343, 148 S.E.2d 143 (App. Ct. 1966); Ruckenbrod v. Mullins, 102 Utah 548, 133 P.2d 325 (Sup. Ct. 1943); Annotation, "Construction of State Statutes Providing for Compensation of Attorney for Services under Appointment by Court in Defending Indigent Accused," 18 A.L.R.3d 1074 (1968).
As in the case of State v. Rush, supra, the duty of gratuitous service in municipal court may become too burdensome for the bar to endure without compensation. In the last paragraph of its opinion the Supreme Court, in State in Interest of Antini, Jr., supra, stated,
*303 With regard to assignments in cases of non-indictable offenses in the local criminal courts, there is no demonstration that presently their burden upon the bar is unreasonable or is likely to become so in the near future. If it should, this court is available to act. [53 N.J. at 495]
Whether the public treasury should now be compelled to compensate attorneys for service in nonindictable offenses cannot now be ascertained, and the sources of such payment should be left to the legislative fact-finding process. See the considerations voiced by the court in Warner v. Commonwealth, supra, 400 S.W.2d at 211.
After a careful reading of the transcript and consideration of the oral argument and the briefs submitted by both parties, the court finds there was probable cause for the charge and that appellant's conduct on July 6, 1971 constituted a contempt of court in violation of N.J.S.A. 2A:10-1 and R. 1:10-1. Therefore, this court is constrained to affirm the judgment of the Paterson Municipal Court.