## JACKSON *v.* THE STATE.

No. 8853.   December 19, 1932.

*H. A. Boykin,* for plaintiff in error.

*George M. Napier, attorney-general, W. G. Neville, solicitor-general,* and *T. R. Gress, assistant attorney-general,* contra.

RUSSELL, C. J.   Sam Jackson was convicted of the offense of rape, without a recommendation, and sentence of death was imposed.   His motion for a new trial, based on the general grounds and three special grounds, was overruled, and he excepted.   The first special ground alleges that movant was confined on the chain-gang of Screven County; that on the afternoon of November 24, 1931, he was brought into court in chains; that the court directed that the shackles be knocked off him; that he was carried out and the shackles removed, and he was brought back immediately into court, and the case was then called for trial; that the indictment upon which he was being prosecuted was found by the grand jury at the November term, 1931, and he was not apprised of the fact until he was brought into court; that when the case was called he had had no opportunity to employ counsel to represent him; that the court thereupon appointed Ernest W. Cail and J. P. Evans as attorneys to represent him, and stated that he would give them a few minutes to confer with movant; that movant was taken into the grand-jury room, and, after a two or three minute conference, the court had him again called back by the bailiff, together with his counsel, and announced that the case would go to trial, and the court then and there proceeded to direct that the case go to trial, and defendant was convicted.   Movant contends that he did not have sufficient time or opportunity in which to inform his counsel as to his defense, or as to what witnesses he desired to have subpœnaed in his behalf; that neither he nor his counsel had sufficient time to ascertain what any of the witnesses actually knew in regard to the transaction; that he was as much entitled to the privilege of counsel as he was to the presence of his witnesses, and in the right

of counsel is included the right to have such time between his arrest and his trial as will at least enable his counsel to become acquainted with his case; that for these reasons he did not have sufficient time, nor did his counsel have sufficient time, to become familiar with his case so as to prepare for trial; and that the court erred in forcing him to trial and in not giving him sufficient time for himself and his counsel to become acquainted with the facts in the case in order to prepare to present his defense to the jury.

On the hearing an affidavit of the defendant in support of the motion included a statement that about the 5th or 6th of July, 1931, he was arrested for being drunk, and also for rape; that he was carried before the judge of the city court, and the officers stated to him that, if he would plead guilty of being drunk, nothing would come of the offense of rape being charged against him; that he was confined in the chain-gang from the time of his sentence in July until he was brought to trial on the charge of rape; that he had no opportunity of conferring with his people or any attorney, and he was under the impression that when he had served the sentence for drunkenness he would not be held on the charge of rape; that after the court appointed him counsel he did not have sufficient time to explain his case to counsel, or tell them what witnesses he would need; and that, if granted a new trial, he could produce witnesses who would testify in his behalf and would testify that he was not guilty of the offense of rape. The attorneys who defended him upon the trial testified by affidavit as to the insufficiency of the time which they had in which to prepare for trial, and that if they could have understood the nature of the case they could have subpœnaed witnesses who could have testified to facts that would have been to the interest of defendant's defense. Five witnesses testified by affidavit that the defendant was a negro of very low mentality.

■ It will be noted that counsel for the accused did not move for a continuance, as they should have done. But, after all, the real question presented by this ground of the motion rests upon that provision of our constitution which declares that every person charged with crime shall be entitled to the benefit of counsel. The means by which one charged with crime is deprived of the benefit of counsel would seem to be immaterial, if the accused is in fact deprived of the benefit of counsel. In this case the court certifies

that the defendant was arraigned for trial upon an indictment which had just been found by the grand jury, that "he was brought into court in chains; that the court directed that the shackles be knocked off of him; that he was carried out and the shackles were removed, and he was brought immediately back into court, and the case was then called for trial." The defendant was not apprised of the fact that he had been indicted until he was brought into court, and when the case was called he had had no opportunity to employ counsel, and the court thereupon appointed the attorneys to represent him, and stated he would give them a few minutes to confer with movant. After a two or three minute conference, the court had the defendant and his counsel called back by the bailiff, and announced the case would go to trial. In support of this ground of the motion, the counsel appointed for the accused deposed that they never had any conference with Jackson prior to their appointment, and knew absolutely nothing about his case; that after the shackles had been removed the court asked Jackson if he had an attorney to represent him, to which he replied no, and thereupon the court appointed deponents to represent him. They went with him into the grand-jury room adjoining the court-room and had a conference of two or three minutes, but on account of his mental condition they could get nothing coherent from him, and while they were trying to ascertain about his case a bailiff called and told them that "the judge said come on in, he was waiting. They went into the court-room, and the defendant was put on trial and convicted."

It is our opinion, to use the language of the affidavit of counsel, that it was impossible for the attorneys to "have gotten familiar with the witnesses, the law or the facts in the case, in the short time given them by the court." The attorneys swore that if they could have understood the nature of the case they could have subpœnaed witnesses and have shown the mental condition of the defendant. In seeming corroboration of this statement, there are attached to this ground of the motion for new trial affidavits of affiants who testified that the defendant is and has always been considered to be an idiot, and also an affidavit stating that the accused is of such low mentality that if he is not always an idiot he becomes "crazy" whenever under the influence of intoxicants or great excitement. The State made no counter-showing to the several affidavits upon this point. It appears from the record that the defendant was at

this time confined in the chain-gang. One witness testified that he had known the accused all his life, that the accused had worked for him for several years as a farm-hand, but he had no sense, and in case of excitement, or if drinking, he was practically crazy; that when defendant was a boy he was severely injured by a mule kicking him over his eye, and since that time he had less sense than before. "Deponent further says that neither Sam Jackson nor his mother have practically any sense; that his mother was a half-idiot; but that they were good workers, but were simply idiots." An affiant testified: "I am a resident of Screven County, and have lived here all my life. I am seventy years of age. I know and have known Sam Jackson all his life. I know his mental condition. Sam is a negro with very little sense, and while he was living with me on my farm he was kicked on the head by a mule, and his skull was fractured over his eye. He was attended by Dr. Frank Mims, who has since died. In addition to being simple-minded naturally, after he received this mule-kick his condition was worse. Undue excitement, madness, or a drink of whisky would absolutely run him crazy, and he would do the most irresponsible things, and seem to be unaware of what he was doing; and in my opinion, if Sam, at the time the alleged crime was committed, had taken a drink of whisky, or if he got unnerved or excited, he was in such condition as not to be mentally responsible for his act. He was recognized as a negro of very low intelligence in the community where he was raised and lived."

In the circumstances of this case, we are of the opinion that the interest of justice requires another investigation, when the evidence introduced in support of the motion for new trial, and which the defendant did not have the opportunity of submitting, may be presented to a jury, without an abridgment of the constitutional benefit of counsel. The case seems to present an exception to the rule which requires a defendant to ask for a continuance or postponement of his case to enable him to meet a charge of which he has not been apprised. In the present case, as explained by counsel in their affidavit, it would perhaps have been a contempt of court had they asked for more time, after the court had sent a bailiff who told them that "the judge said come in, he was waiting;" it appearing that after counsel had been in conference with their client for two or three minutes the court had defendant again called back

by the bailiff, together with his counsel, and "announced that the case would go to trial."

■ The second headnote requires no elaboration. The court erred in overruling the motion for a new trial.

*Judgment reversed.  All the Justices concur.*