## 44682. PERRY v. THE STATE.

Eberhardt, Judge. The State prosecuted Lillie Berry, charging that on February 15, 1969, she "did keep, maintain and oper-

ate a lottery, known as the number game, for the hazarding of money." Prior to the calling of the case for trial the defendant, asserting that she was impoverished and without funds, requested the appointment of counsel for her defense. The court stated that it recognized that defendant, due to her poverty, was entitled to counsel. However, it was observed that a public defender who previously had been assigned to the Criminal Court of Fulton County under orders of the county commissioners, as well as the funds appropriated for paying him, had been withdrawn for service elsewhere, so that "This court is in the position of not having a regular public defender," and that the court did not know whether under the Public Defender Act of 1969 it had authority to appoint counsel, or whether it could pay one if appointed, and that a continuance would result in expense to the county in paying witnesses who were present for the trial, and in view of the fact that defendant had been out on bond and her case had been on the regularly published calendar of cases for trial, "the court is not going to appoint counsel in this case, and is ordering the case to trial. You will act as your own counsel, but the court will be careful to preserve your rights in this respect." There was a further observation that "usually people engaged in the lottery are working for people who make money out of the lottery operation. The court, at this time, does not know what the evidence will show, or where [the defendant] will fit into the heirarchy of the lottery operation, [but has, on occasion,] found that persons who appeared before the court charged with the offense of lottery had been coached and schooled by the higher-ups in the lottery business that one way to convince the court that they were not in the business was to be in court without a lawyer. For these reasons the court refuses to appoint a private attorney . . . to represent the defendant at State expense."

Defendant was convicted of "being a lottery player," sentenced to pay a fine of $250 and 12 months in the public works camp, the confinement to be suspended upon payment of the fine, and from that judgment she appeals. *Held:*

Whatever may have been done in withdrawing a public defender assigned to the Fulton Criminal Court, and whatever the reason therefor, it was error to put the defendant on trial without counsel. *Code Ann.* § 2-105; *Martin v. State,* 51 Ga.

567, 568; *Jackson v. State,* 176 Ga. 148 (1) (167 SE 109); *Fair v. Balkcom,* 216 Ga. 721 (119 SE2d 691). An attorney might have been appointed to represent her whether the county commissioners had made provision for paying for his services or not. *Weiner v. Fulton County,* 113 Ga. App. 343 (148 SE2d 143). While the Georgia Criminal Justice Act (Ga. L. 1968, p. 999 et seq.) should provide effective means of affording counsel to indigent defendants, it is not the exclusive method for accomplishing that end. See *Code* § 9-601; *Elam v. Johnson,* 48 Ga. 348, 350; United States v. Dillon, 346 F2d 633, 636.

The record indicates that this defendant was illiterate; she could neither read nor write. She obviously knew nothing of court procedures. Throughout the trial she attempted no cross examination of the State's witnesses, made no objections to any testimony or evidence tendered, and offered no witness or evidence in her own behalf beyond the bare statement that "I am not guilty." However, more could hardly have been expected of her.

While the statement of the court, in denying her request for counsel and forcing her to serve as her own counsel, that he intended to see to it that the State followed the rules of law and of evidence in presenting its case and that the defendant's rights would, to the best of his ability, be protected during the trial, evidenced a laudable intention, the fact remains that an impoverished defendant who is unable to employ or arrange for counsel must be afforded an attorney when he requests it in order to meet the constitutional guaranty and to afford due process. If it is not done defendants occupying the status of this one are likely to ponder with Mr. Dooley: "Don't I think a poor man has a chanst in court? Iv course he has. He has the same chanst that he has outside. He has a splendid poor man's chanst." Dunne, Mr. Dooley on the Choice of Law.

It is unnecessary to deal with the several other enumerations of error, most of which are not likely to occur on another trial.

*Judgment reversed. Bell, C. J., and Deen, J., concur.*

Argued September 2, 1969—Decided September 12, 1969.

*William W. Daniel* for appellant.

*Hinson McAuliffe, Solicitor, James L. Webb, Thomas E. Moran, Frank A. Bowers,* for appellee.