## PARDEE v. SALT LAKE COUNTY.

No. 2234. Decided September 22, 1911 (118 Pac. 122).

1. ATTORNEY AND CLIENT—EMINENT DOMAIN—COUNTY CHARGES—EXPENSES IN JUDICIAL PROCEEDINGS—ATTORNEY FEES. Neither Const., art. 1, sec. 12, providing that every accused shall have the right to appear and defend in person and by counsel, nor section 22, providing that private property shall not be taken or damaged for public use without just compensation, would make a county liable for the services of an attorney appointed by the court to defend an indigent accused. (Page 486.)

2. CONSTITUTIONAL LAW. Const., art. 1, sec. 7, providing that no person shall be deprived of his property without due process of law, would not apply to make a county liable for the services of an attorney appointed by the court to defend an indigent accused. (Page 486.)

3. ATTORNEY AND CLIENT—CHARGES AGAINST COUNTY—EXPENSES IN JUDICIAL PROCEEDINGS—ATTORNEY'S FEES—DEFENSE OF INDIGENT ACCUSED—"SUPPORT"—"COSTS." Comp. Laws 1907, sec. 538, subd. 3, makes the necessary expenses incurred in the support of persons charged with or convicted of crime and committed to the county jail charges against the county. Section 4806 provides that the cost of trial shall be paid by the county wherein the offense was committed, and section 539 provides that costs accruing before removal shall be charged against the county which the prosecution originated. *Held*, that the statutes did not raise an implied liability by a county to pay for services of an attorney appointed by the district court to defend an indigent accused, the term "support" used in section 538 not including such charges, and the word "costs" as used in the other sections not including attorney's fees in a criminal case. (Page 487.)

4. MONEY RECEIVED—RIGHT OF ACTION. As a rule, where a person or corporation obtains another's money or property under circumstances making it unjust to retain it, or where a public corporation incurs an obligation authorized by statute, but contrary to the form thereof, the law implies a promise to pay such money so as to authorize an action for its recovery. (Page 488.)

5. MUNICIPAL CORPORATIONS—CONTRACTS—POWER. Where a municipal corporation is not given power to contract upon a particular subject, or the statute provides a specific manner of contracting, there is no implied power in the corporation to contract except as expressly authorized. (Page 488.)

6. CRIMINAL LAW—TRIAL—RIGHT TO ATTORNEY—INDIGENT ACCUSED—CONSTITUTIONAL LAW. Const., art. 8, sec. 10, providing for the election of county attorneys, and that, where a county attorney fails to prosecute according to law, the court may appoint an attorney for the time being, does not authorize the court to appoint an attorney to defend an indigent accused. (Page 488.)

7. ATTORNEY AND CLIENT—DEFENDING INDIGENT ACCUSED—COMPENSATION. Comp. Laws 1907, sec. 489, provides that the powers of a county can be exercised only by the board of county commissioners or agents acting under its authority or authority of law, and the statute also provides that the board shall control and direct the prosecution and defense of all suits to which the county is a party, and shall employ counsel to assist the county attorney in conducting such suits when necessary. Held, that a county, through the board of county commissioners, only had power to employ counsel to prosecute or defend actions to which the county was a party, and was not a party to a criminal case so as to make it liable for services of an attorney appointed by the district court to defend an indigent accused pursuant to section 4767, which merely authorizes the court to assign counsel to defend an accused who desires, but is unable, to employ counsel. (Page 489.)

8. ATTORNEY AND CLIENT—COMPENSATION—APPOINTMENT BY COURT—DEFENDING INDIGENT PRISONER. An attorney appointed by the court to defend an indigent accused pursuant to Comp. Laws 1907, sec. 4767, is not entitled to recover compensation for his services from the county. (Page 491.)

9. COUNTIES—PUBLIC DEBTS—LIMITATION OF AMOUNT. Comp. Laws 1907, sec. 492, taken from Const., art. 14, sec. 3, provides that no county shall incur any liability for any purpose exceeding in any one year the taxes for the current year without the assent of a majority of the electors, and that a liability incurred contrary to such provisions shall be void. Section 493 provides that all contracts and liabilities to pay made in violation of the

title shall be absolutely void, and no basis for a claim against the county treasury. *Held* that, in the absence of a showing that the county taxes for the year 1910 were sufficient to pay a claim against a county for legal services defending an indigent accused in that year, no recovery therefor could be had, even if it were otherwise recoverable. (Page 495.)

APPEAL from District Court, Third District; *Hon. T. D. Lewis*, Judge.

Action by James D. Pardee against Salt Lake County.

Judgment for defendant. Plaintiff appeals.

AFFIRMED.

*M. E. Wilson* for appellant.

*I. E. Willey* for respondent.

FRICK, C. J.

Appellant brought this action against the respondent county to recover for services rendered by him in defending an indigent person charged with murder under an assignment made by the district court of Salt Lake County. In his complaint the appellant, in substance, alleged that he is, and for many years has been, an attorney at law practicing his profession in Salt Lake County, Utah; that on the 8th day of April, 1910, in a certain criminal action then pending in the district court of Salt Lake County, Utah, wherein the State of Utah was plaintiff and one Thomas Riley was defendant, said Riley was charged with the crime of murder in the first degree, and, when he was arraigned therefor in said court, he appeared without counsel, and said that he was without means to employ such to represent him in said action; that the said court then asked said Riley whether he desired the aid of counsel, to which said Riley replied in the affirmative, whereupon the court assigned appellant to defend said Riley upon such charge in said court; that, pursuant to said assignment,

appellant made proper preparation to defend, and did defend, said Riley against said charge in said court, and that the services rendered by appellant in that behalf were reasonably worth the sum of $950; that appellant in the year 1910 had duly presented his claim for services rendered as aforesaid, as required by law, and that the board of county commissioners of Salt Lake County duly heard and considered said claim, and after doing so, in the year aforesaid, disallowed the same. Appellant prayed judgment against Salt Lake County for the said sum of $950, with interest and costs. Salt Lake County, hereinafter styled respondent, by its attorney demurred generally to the complaint. The demurrer was sustained, and the court entered judgment dismissing the action, and appellant presents the record on appeal.

The only error assigned is that the court erred in sustaining the demurrer, and in entering judgment dismissing the action. Counsel for appellant in his brief states the question to be solved by us in the following language: "The only question in this case is whether, notwithstanding there is no statutory provision for compensation to an attorney appointed by the court to defend an indigent criminal charged with a capital offense, such attorney is entitled to compensation from the county in which the information was found and in which the case was tried." From appellant's own statement it is thus at once made apparent that he does not claim that there is either an express contract or an express provision of law under which the county is made liable in this case. It is, however, strenuously contended by appellant that the county is liable under an implied agreement. This implied agreement, it is contended, arises out of some or all of the following constitutional and statutory provisions, namely: Section 12 of article 1 of the Constitution of this state, among other things, provides that "in criminal prosecutions the accused shall have the right to appear and defend in person and by counsel." Section 22 of the same article reads: "Private property shall not be taken or damaged for public use without just compensation." And section 7 of said article provides: "No person shall be deprived of life, liberty or prop-

erty without due process of law." Comp. Laws 1907, section
4767, reads as follows: "If the defendant appears for ar-
raignment without counsel, he must be informed by the court
that it is his right to have counsel before being arraigned and
must be asked if he desires the aid of counsel. If he desires
and is unable to employ counsel, the court must assign coun-
sel to defend him." Section 538 specifically enumerates what
shall be considered county charges. Subdivision 3 of that
section is as follows: "The expenses necessarily incurred in
the support of persons charged with or convicted of crime
and committed therefor to the county jail" are to be deemed
county charges. In case a criminal action is removed for
trial from the county where the crime was committed to
another, section 4806 provides that the costs of the trial shall
be paid by the county where the offense was committed, and
section 539 provides that the costs accruing before removal
shall be charged against the county in which the prosecution
originated. These are all the constitutional and statutory pro-
visions which are in any way or to any extent relied on by ap-
pellant. There are a number of statutory provisions which
we think are material, and to which we shall refer hereafter.

Recurring now to the constitutional provisions to which
our attention has been called, we fail to see how, if at all,
these provisions can aid appellant in his claim that the re-
spondent county is liable by implication of law. Surely there
is nothing in section 12 to which we have called attention
from which an implied liability can be claimed. All that this
section does is to guarantee the right of a person
charged with crime to appear, and defend both in per- **1, 2**
son and by counsel. Since such right did not exist at
common law, it is easy to see why the provision has been in-
corporated into many of our state constitutions. Section 22,
to which reference has been made, can in no way influence
the question now under consideration. If the purpose of that
section is kept in mind its meaning is clear. The same may
be said of section 7, to which reference has been made. There
is nothing in that section, therefore, that can shed any light
upon, much less control, the question to be decided here.

How about the several sections of the statute upon which appellant relies? The first provision which we shall consider is found in section 538. This section in explicit terms enumerates what are to be deemed county charges. It is assumed by counsel that subdivision 3 of that section is entitled to some force here. We have already quoted **3** that subdivision, and need not repeat it. The duty imposed on the county by that subdivision is to support the persons therein named. When? In case they are committed to the county jail either before or after conviction, and hence cannot support themselves. Can any one seriously contend that the word "support," used in connection with the other words, as in the case of the sentence now under consideration, has anything whatever to do with providing an attorney to defend the accused at the trial or after trial upon appeal? It seems needless to discuss a proposition so palpably clear. Another provision relates to the payment of certain costs. Under statutory provisions similar to those under consideration, the term "costs" has never been extended to include attorney's fees, at least not in criminal prosecutions, so far as we know. Section 2, Words & Phrases, 1634-1638, where the word "costs" is considered, construed, and applied under a large variety of circumstances, and where it is held that costs, as the term is used in the statute to which reference has been made by us, does not mean compensation or fees for any attorney in a case. There is therefore nothing left upon which appellant can rely, except the provisions of section 4767, *supra.*

It is seriously contended that because the court by that section is required to assign counsel, and that counsel, as an officer of the court, under ordinary circumstances, cannot refuse to comply with the court's order, therefore the court is made the legal agent of the county in making the assignment, and hence a legal obligation upon the part of the county to pay the attorney so appointed reasonable compensation for his services is implied.

The general rule in this regard is to the effect that where there is a legal duty requiring a thing to be done, or where a person, or corporation, public or private, obtains the money or property of another under such circumstances that would make it unjust or inequitable to retain the same, and in case of a public corporation, if the law authorizes it to incur the obligation in the first instance but the forms of law were omitted, then the law ordinarily implies a promise to pay, and an action may be maintained upon such a promise. When, however, the power to contract upon the subject-matter is withheld from a public corporation, or where the statute expresses a specific method of making the contract, then a liability does not arise by implication. 2 Page on Contracts, sections 1009-1012, where illustrative cases are collated; 2 Dillon on Municipal Corps. (5th Ed.), sections 793-795. See, also, *Argenti v. City of San Francisco,* 16 Cal. 283, 284, where Mr. Chief Justice Field discusses the doctrine.

The first question, therefore, that arises is, Did the law authorize the county commissioners or the district court to incur a liability against the county of Salt Lake for attorney's fees in defending one charged with crime? Section 10 of article 8 of the Constitution provides for the election of county attorneys, and also provides that "in all cases where the attorney for any county or for the state fails or refuses to attend and prosecute according to law, the court shall have power to appoint an attorney *pro tempore*." Here the express power is given to appoint an attorney under certain circumstances to prosecute in criminal cases. No one, certainly no lawyer, will contend, that, because express power is given to appoint an attorney to prosecute in criminal cases, therefore power to appoint an attorney to defend in such cases may be implied. If any implication arises at all, it is just the contrary. It may be said, therefore, that there is at least no constitutional warrant for appointing an attorney to defend in criminal cases.

Let us examine the statute for a moment to see what power is conferred upon the county commissioners with regard

to the execution of the corporate powers of the counties of this state. Section 489 provides: "The powers of a county can be exercised only by the board of county commissioners, or by agents and officers acting under authority of the board or authority of law." One of the powers to be exercised by the board of county commissioners is "to control and direct the prosecution and defense of all suits to which the county is a party and when necessary to employ counsel to assist the county attorney in conducting the same." So far, what is there that even in the remotest degree indicates that the district court or judge who is a state officer can, without the consent of the commissioners, and without their knowledge even, become their agent and act for them in creating a liability against the county, or that he is an officer acting for them by "authority of law?" If we construe the provision with regard to how the corporate powers of the county shall be exercised in connection with the provisions giving the commissioners power to control and direct actions to which the county is a party, and to employ counsel if necessary to assist the county attorney, it is quite clear that no power is here conferred upon any one to employ counsel on behalf of the county, except to defend or prosecute actions to which the county is a party. Is the county a party to a criminal action? Clearly not. The county as a corporate entity is not interested directly or remotely in such a prosecution. A county as an arm of the state government no doubt may by law be required to pay out of the county treasury a part of the costs arising out of criminal prosecutions. Where such is the case, however, the county makes the payment by virtue of some positive law, and not because such payment has any relation to county government. No express legal duty is thus imposed upon the counties of this state to pay for services rendered by an attorney who at the request of the court defends an indigent person who is on trial for crime. Nor is there anything from which a legal duty to pay for such services may be inferred.

Up to this point we have limited the discussion to our local law and to general principles which may be deduced therefrom. Counsel for appellant, however, contends that the force of reason, if not the greater number of cases, is in favor of his contention, while counsel for respondent, with equal assurance, insists that the great weight of authority, as well as of reason, sustains their contention. We shall, as briefly as possible, refer to the cases. The first case that we have been able to find directly in point is the case of *Hall v. Washington County* (Iowa), 2 G. Greene, 473. This case was decided in 1850, and is based upon the ground that, under the statutes, it was the duty of the court to assign counsel to defend the accused, and, as he was a pauper, therefore it was the duty of the county to defend him, and hence the county was liable as upon an implied promise. Upon what legal principles the court acted in declaring that there existed an implied promise by the county to pay the attorney for his services is not made clear. The liability is assumed rather than worked out from legal cause to legal effect. This case is followed by the same court in a much later case, namely, *Hyatt v. Hamilton County,* 121 Iowa, 292, 96 N. W. 855, 63 L. R. A. 614, 100 Am. St. Rep. 354. The later case was, however, a disbarment proceeding, and the question decided was whether the county was liable to an attorney who had been appointed by the court to prosecute the attorney whom it was sought to disbar by the proceedings. Upon the authority of the earlier Iowa case, it was held in the latter that the county was liable. It is somewhat singular, however, that about eighteen months before the last decision the same case in a somewhat different form was before the Supreme Court of Iowa, and that court then held without a dissenting voice that the county was not liable. (See *Hyatt v. Hamilton County* [Iowa], 90 N. W. 508.) What is more singular still is that the former decision is in no way referred to in the latter one, nor is the former one officially reported, so far as we have been able to find. The Supreme Court of Iowa is, however, not a unit upon the question of liability of the county under circumstances like

those of this case, as is made apparent from the dissenting opinions of Mr. Justice Dillon and Mr. Justice Lowe in *White v. Polk County,* 17 Iowa, 418-421.

The next case in order of time is *Webb v. Baird,* 6 Ind. 13, decided in 1854. In that case the Supreme Court of Indiana arrived at the same conclusion as the Iowa Supreme Court in *Hall v. Hamilton County, supra,* and practically for the same reasons. In that case, however, a constitutional provision which was then in force in that state is quoted, which is to the effect that "no man's particular services shall be demanded without just compensation." It seems, however, that the court did not base its decision upon this provision. This is made clearer still from a later case, namely, *Israel v. State,* 8 Ind. 467, where the foregoing provision of the Constitution was squarely presented by a witness who was required to attend court and give evidence in a criminal prosecution without being paid any fees or expense money to defray his expenses while attending court. The Supreme Court of Indiana found no difficulty in holding that the state could require witnesses to attend court and testify in criminal prosecutions without pay.

Oregon and Tennessee have similar constitutional provisions and the courts of those states, the former in *Daly v. Multnomah County,* 14 Ore. 20, 12 Pac. 11, **8** and the latter in *Henley v. State,* 98 Tenn. 665, 41 S. W. 352, 1104, 39 L. R. A. 126, held that the witnesses could be compelled to attend courts in criminal prosecutions as part of their public duty without compensation or expense money. If citizens generally may be compelled to appear in court and testify as witnesses when the state prosecutes for public crimes, as a public duty, without compensation, we cannot see how attorneys in view of their special relation to the court and state can escape from assisting the court in such prosecutions in case the accused is an indigent person. In principle there is no difference between the services rendered by the witness and those rendered by the attorney so far as the right to compel attendance at court

without compensation is concerned. There are some later Indiana cases upon this subject to which we shall refer later. It is but just to say that by taking all of the Indiana cases together it is reasonably clear that that court based the liability of the county upon an implied promise arising from the duty of the court to assign counsel to defend a pauper prisoner.

The next case is *Carpenter v. County of Dane*, 9 Wis. 274. This case was decided in 1859, and follows the case of *Hall v. Washington County, supra*. This case was followed by the same court in *Dane County v. Smith*, 13 Wis. 585, 80 Am. Dec. 754. In the latter case it was held that an act of the legislature prohibiting the payment of fees for defending indigent offenders was void. The Supreme Court of Wisconsin has, however, apparently departed from the views expressed in that case in a much more recent one entitled *Green Lake County v. Waupaca County*, 113 Wis. 425, 89 N. W. 549. As we understand the earlier Wisconsin case, the decision was based upon the principle that because the district court is authorized to appoint an attorney to defend an indigent person charged with crime therefore the county in which the case is pending is liable for a reasonable compesation to be determined by the court as a judicial question. In the latter case it is, however, squarely held, as it is in about all of the states of this Union, that the legislature may fix an amount beyond which a court cannot go in allowing attorney's fees for defending indigent persons charged with crime. If, therefore, it be once conceded that the legislature may determine and fix a fee in gross, or by the day, which the attorney must accept for defending an indigent person charged with crime, then there is no escape from the conclusion that the whole question is legislative, and not judicial. From the foregoing it is apparent that there are at least three states in which it has been held that, in the absence of an express statute, the county in which a case is prosecuted is nevertheless liable for attorney's fees in defending indigent persons accused of crime, and that such liability arises by implication of law.

Upon the other hand, there are a large number of decisions emanating from courts of last resort of many of the states of the Union, which, after much thought, have arrived at an opposite conclusion from that reached by the Supreme Courts of Iowa, Indiana, and Wisconsin. We refer the reader to the following cases: *Nebb v. U. S.,* 1 Ct. Cl. 173; *Henry v. U. S.,* 15 Ct. Cl. 162; *Elam v. Johnson,* 48 Ga. 348; *State v. Com'rs,* 26 Ohio St. 599-603; *Posey v. Mobile County,* 50 Ala. 6; *Arkansas County v. Freeman & Johnson,* 31 Ark. 266; *Presby v. Klickitat County,* 5 Wash. 329, 31 Pac. 876; *Wayne County v. Waller,* 90 Pa. 99, 35 Am. Rep. 636; *Rowe v. Yuba County,* 17 Cal. 62; *Lamont v. Solano County,* 49 Cal. 158; *Vise v. County of Hamilton,* 19 Ill. 78; *Johnson v. Whiteside County,* 110 Ill. 22; *Johnston v. Lewis & Clark County,* 2 Mont. 159; *Case v. Shawnee County,* 4 Kan. 511, 96 Am. Dec. 190; *Washoe Co. v. Humbolt County,* 14 Nev. 128; *Yates v. Taylor County Court,* 47 W. Va. 376, 35 S. E. 24; *State v. Simmons,* 43 La. Ann. 994-995, 10 South. 382; *Dismukes v. Bd. of Superv'rs,* 58 Miss. 612, 38 Am. Rep. 339; *People v. Bd. of Superv'rs,* 78 N. Y. 622; *Wright v. State,* 50 Tenn. 256. (See, also, 13 Century Digest, cols. 1928, 1929.) In many of the foregoing cases, the principles upon which the early Iowa case, as well as the Indiana and Wisconsin cases are based, are thoroughly discussed. The courts are practically unanimous upon the question that attorneys should receive reasonable compensation for their services in performing what may be said to be a public duty and in which organized society is greatly concerned, but they are equally unanimous that the power to provide compensation for services rendered under such circumstances rests with the legislature, and not with the courts. In all the cases last above cited there is not one in which the doctrine that the county is liable by implication, because the court is required to assign counsel to defend an indigent person charged with crime, is upheld, although in many of them it is thoroughly considered. Nor is that doctrine well founded, as we have attempted to demonstrate. In the case of *Presby v. Klicki-*

*tat County,* 5 Wash. 329, 31 Pac. 876, about all the constitutional and statutory provisions which are referred to in this case were involved, considered, and passed upon. The Supreme Court of Washington, as we think, satisfactorily disposes of all of appellant's contentions, and, after a thorough consideration, can find no legal ground upon which a recovery could be permitted to stand. The Supreme Court of Pennsylvania so clearly outlines the conditions that prevailed in that state upon the question under consideration in the case *of Wayne County v. Waller, supra,* that we reproduce a portion of the statement of the court in that case, which is as follows:

"While there is some force in the reasoning of the Iowa and Wisconsin courts, we adhere to the opposite view as according better with a practice which has been almost universal and of such long standing as to have acquired the force of law. In this state we have always proceeded on the safe principle of requiring statutory authority, either in express terms or by necessary implication, for all such claims made upon the public treasury. To hold that counsel appointed to defend insolvent prisoners may demand compensation from the county would be a departure from a time-honored custom to the contrary, and it is not difficult to foresee the mischief to which it would lead. It is far better to let such cases rest on the foundation which has hitherto sustained them—human sympathy and a just sense of personal obligation. No poverty-stricken prisoner is ever likely to suffer for want of necessary professional or pecuniary aid."

The conditions prevailing in the courts of Pennsylvania referred to in that case were likewise the conditions which prevailed in the courts of this state when the services in question were rendered, and had prevailed by common consent of both bench and bar for many years, certainly during all the years of statehood if not for many years preceding that event. It may be that, if the law were clear that attorneys rendering services under the circumstances of this case were entitled to draw upon the county treasury for compensation the practice of the courts and the concessions of the bar to the contrary should not prevail over a plain legal requirement. When, however, as in this case, there is no express provision of law authorizing the county to pay for

such services, and, in addition to this, the overwhelming weight, as we think, of both reason and authority is against it, the practice which has long prevailed should not be disturbed by the courts. We do not only concede—we assert—the proposition that the legislature of this state should at the first opportunity provide for a reasonable compensation to be allowed to attorneys in cases where they are required to devote their attention, skill, and time to defending indigent persons charged with crime, and are placed on trial therefor. The services are, however, in their nature public (and if not public the county treasury has nothing to do with them), and under our theory of government, therefore, in the absence of an express provision to the contrary, the duty to provide compensation for public service belongs exclusively to the legislative department of government.

But to our minds there is still another very cogent reason why the district court did not err in sustaining the demurrer in this case. Comp. Laws 1907, section 492, so far as material here, provides:

"No county shall incur any liability or indebtedness, in any manner or for any purpose, exceeding in any one year the taxes for the current year, without the assent of a majority of such qualified electors. . . . An indebtedness or liability incurred contrary to this provision shall be void."

To make assurance doubly sure the next section provides:

"All contracts, authorizations, allowances, payments, and liabilities to pay, made or attempted to be made in violation of this title shall be absolutely void and shall never be the foundation or basis of a claim against the treasury of such county."

It may be urged that there are other statutory provisions relating to the payment of claims against counties which may to some extent at least be in conflict with the foregoing limitations, and hence the provisions should be considered and construed together. Ordinarily this is true, but, in view of the situation here, this contention is untenable because the limitations found in section 492, *supra,* are taken from section 3 of article 14 of the Constitution of this state,

and, the limitations and prohibitions being in positive and unambiguous terms, no county can add to its liability, except in the manner there prescribed, anything to the contrary in any section of any statute notwithstanding. Section 18 of article 11 of the Constitution of California, as far as material here, provides: "No county, city . . . shall incur any indebtedness or liability in any manner or for any purpose, exceeding in any year the income and revenue provided for such year without the assent," etc. The Supreme Court of California has at different times had occasion to construe and apply the constitutional provision aforesaid. The last time that court had the matter under consideration was in the case entitled *Buck v. City of Eureka,* 124 Cal. 61, 56 Pac. 612. The plaintiff in that case was an attorney at law, and asked judgment against the city of Eureka for legal services rendered by him for it upon an implied promise or agreement. The lower court held that the liability arising out of an implied promise did not fall within the constitutional limitations we have quoted. The Supreme Court, however, held that a liability arising out of an implied agreement is prohibited the same as one based upon an express agreement would be, and further held that, unless it is alleged and proved that there were "unappropriated revenues when the liability was incurred, . . . the claimant will have no right to a judgment in any form."

While the appellant alleges that he rendered the services in question in the year 1910, that he presented his claim for allowance and that the same was rejected in that year, he nevertheless nowhere alleges that his claim for $950 may not in whole or in part have been "in excess of the taxes for the current year;" that is, the year 1910. We thus have a case where a liability against a county may be created in but two ways. One is that the amount of the obligation is within the revenues produced from taxation for the year in which the liability arose, and, if such is not the case, the other is that at least a majority of the qualified electors of the county voting upon the proposition shall vote in favor of incurring the liability. In view of these constitutional pro-

visions which control in all cases, no liability can arise by implication against a county unless the current revenues are sufficient to meet the obligation incurred. In view that in this case appellant expressly admits that he does not claim under an express agreement, he must state sufficient facts from which an implied one may arise. This he has not done, for two reasons: (1) Because in the general statement of his cause of action he does not allege facts from which the law implies an agreement to pay by the county for the reasons stated in the course of this opinion; and (2) because no facts are alleged showing that the taxes of 1910 were sufficient to cover the claim sued upon either in whole or in part.

The Supreme Court of Indiana in recent cases, namely, *Board, etc. v. Mowbray,* 160 Ind. 10, 66 N. E. 46, and *Board, etc. v. McGregor,* 171 Ind. 638, 87 N. E. 1, expressly holds that the whole matter of compensating attorneys for defending poor persons charged with crime belongs to the legislature, and, when the latter provides that no such services shall be paid for unless an appropriation has been made therefor, the attorney rendering such services must, in order to recover, allege and prove that an appropriation has been made, and that it was not exhausted when the services sued for were rendered. A similar law is enforced in Ohio. (See *State v. Com'rs, etc.,* 26 Ohio, St. 599.) As we have seen, even the Supreme Court of Wisconsin has changed front upon this question insofar as to state that the question of compensation in such cases is legislative rather than judicial.

From what has been said, it follows that the judgment should be affirmed, with costs to respondent. It is so ordered.

McCARTY, J., concurs.

STRAUP, J. I concur on the ground that the alleged claim is not a proper charge against the county.