447 P.2d 193

In the matter of the Mental Condition of
John George BEDFORD,

v.

SALT LAKE COUNTY, Appellant.

No. 11220.

Supreme Court of Utah.

Nov. 13, 1968.

Gordon B. Christensen, Salt Lake County Atty., Salt Lake City, Donald Sawaya, Deputy County Atty., Salt Lake City, for appellant.

Maxfield, Gammon & Ellis, Richard L. Maxfield, Provo, for respondent.

ELLETT, Justice:

The respondent is not a party to the above-entitled matter. He is an attorney appointed by the court to represent an allegedly insane person during an involuntary proceeding to determine sanity.

Section 64–7–36 subd. G, U.C.A.1953, Replacement Vol. 7A, reads as follows:

The proposed patient, the applicant, and all other persons to whom notice is required to be given shall be afforded an opportunity to appear at the hearing, to testify, and to present and cross-examine witnesses, and the court may in its discretion receive the testimony of any other person. The proposed patient shall not be required to be present, and

the court is authorized to exclude all persons not necessary for the conduct of the proceedings. The hearing shall be conducted in as informal a manner as may be consistent with orderly procedure and in a physical setting not likely to have a harmful effect on the mental health of the proposed patient. The court shall receive all relevant and material evidence which may be offered and the rules of evidence shall not apply. An opportunity to be represented by counsel shall be afforded to every proposed patient, and if neither he nor others provide counsel the court shall appoint counsel.

Pursuant to this statute the trial court appointed Mr. Maxfield, the respondent, to represent the interest of the alleged insane person. On motion made by respondent and after notice given to the county attorney of Salt Lake County, the court awarded Mr. Maxfield a judgment of $75 against Salt Lake County. This appeal followed.

The appellant admits that the sum awarded is a reasonable amount but denies any obligation to pay it.

In 1965 the Legislature of Utah enacted Chapter 171, Laws of Utah, which provided for certain minimum standards to be provided by each county for the defense of defendants who are financially unable to obtain adequate defense in *criminal cases*. Provision was then given to the board of county commissioners to provide for those standards by either:

(A) Authorizing the court to appoint a qualified attorney, or

(B) Arranging through nonprofit legal aid or other associations.

The respondent does not claim that the proceedings are criminal, but he argues that since a man's liberty was involved, the obligation to pay a reasonable fee falls upon the County, the same as would be the case in a criminal matter.

It should be noted here that the proceedings are not penal in any sense of the word. They are equitable and designed for the benefit of a person who may be in need of hospitalization and treatment and who may lack sufficient insight into his problem to secure the needed treatment.

Ordinarily, everyone connected with the proceeding is a friend of the patient. The doctors only seek to cure, if possible. The judge has no animosity towards the patient, nor has he any desire to cause the State to go to the expense of keep and treatment for one who does not need it. An attorney who would represent an insane patient would be remiss if he attempted to prevent his client from receiving needed treatment. The likelihood that designing persons might impose upon the examining doctors and the

court is extremely remote.[1] Should such a thing occur, the superintendent of the hospital would quickly detect the sanity of the patient and would be the first to want to turn the patient out, for it is too well known to be disputed that hospitals are anxious to discharge a patient as soon as practicable.

This court has on two prior occasions, when there was no statute requiring the county to furnish legal counsel to a defendant in a criminal case, held that the county has no obligation to pay an attorney who undertakes the defense of an impecunious defendant.

The case of Pardee v. Salt Lake County, 39 Utah 482, 118 P. 122, 36 L.R.A.,N.S., 377 (1911), held that in the absence of an express statute to the contrary, an attorney appointed by the court to defend an indigent defendant was not entitled to payment from the County for his services. Thirty-two years later the holding of the Pardee case was affirmed in the case of Ruckenbrod v. Mullins, 102 Utah 548, 133 P.2d 325, 144 A.L.R. 839 (1943). The author of this opinion was the trial judge in the Ruckenbrod case and held the County liable, trusting that the Pardee case would be reversed by the Supreme Court of Utah. This court reversed the trial court and affirmed the holding of the Pardee case, and now the law has been settled for so

long a period of time in that regard that we think we ought not now reverse it by our present decision.

Indigent defendants in criminal cases who desire counsel have always been represented, and the court has always appointed a lawyer for that purpose. The assignment has been assumed by the lawyer out of respect for the court in which he serves and out of a sense of responsibility which lawyers feel towards humanity in general.

■ By requesting the court to appoint counsel, an indigent defendant impliedly consents to pay a reasonable fee for the services rendered, and thus the lawyer is not entirely forced to render service without compensation therefor. However, it must be understood that the assumption of a defense of an impecunious defendant by a lawyer is a matter strictly between the court and the lawyer, and the legislature can no more require a lawyer to represent a client for free than it can compel a physician to treat a sick or injured indigent patient without pay. For the legislature to attempt to compel a lawyer to work by passing a statute requiring the judge to order it done would be to take his property without giving just compensation, or to impose a form of involuntary servitude upon him. The legal assistance which an attorney renders to a client is his stock in

1. Sometimes relatives try to get a senile dependent committed so as to avoid taking care of him. More rarely discordant spouses seek commitment of one another.

trade; and in order for the attorney to make a living, he must sell his service.

Until the legislature provides a method by which a lawyer can be paid for compulsory services to an indigent person, a statute requiring such services is unconstitutional as requiring one to give services (a form of property) without just compensation being paid therefor. It matters not that the service is to be rendered to one other than the state. It would still be an involuntary taking by the state.

■ The statute which requires the judge to appoint a lawyer to represent an alleged incompetent person in a proceeding for involuntary hospitalization cannot be sustained. The court in its own discretion can and will appoint counsel when the circumstances indicate a need for it. If and when the legislature feels that counsel must be appointed other than at the instance of the judge, then the legislature must provide the means with which to pay for that service. In view of the decisions of the United States Supreme Court to the effect that unless counsel is appointed for criminal defendants the conviction is a nullity, the state legislature has wisely provided that counties must pay for such legal services. No such provision has as yet been made to pay an attorney who represents an allegedly insane patient.

It may be that a lawyer trained in the reasons given in recent holdings of the United States Supreme Court will be able to secure, by means of a writ of habeas corpus on the grounds that the patient was not represented at the hearing by an attorney, the release of a mentally deranged person recieving treatment in the state hospital. If perchance that should be determined to be the law, then we would have to take a second look at the statutes of this state. Until that perversion of justice occurs, however, we hold that a lawyer is not necessarily required to represent the patient at an involuntary hospitalization proceeding, and, therefore, the county is not liable for his fee.

The judgment of the district court is reversed. No costs are awarded.

CALLISTER, TUCKETT, and HENRIOD, JJ., concur.

CROCKETT, Chief Justice (dissenting).

I dissent, believing that under the facts here presented it is unnecessary and therefore improper to declare the statute in question, Sec. 64–7–36 subd. G, U.C.A. 1953, unconstitutional. Whenever it is reasonably possible to do so, a statute should be so interpreted and applied in a given set of facts as to avoid bringing it into conflict with constitutional provisions. Salt Lake City v. Perkins, 9 Utah 2d 317, 343 P.2d 1106.

Viewed in the light of the proposition just stated, it is my opinion that the stat-

ute in question should be regarded as permissive as to the appointment of counsel. If it had been intended that a patient whose sanity was being examined into should have a lawyer in all cases, the legislature could have plainly so stated: that in all such cases the patient *must* have a lawyer to represent his interests. But it did not do so. Instead, it used the language:

> An *opportunity* to be represented by counsel *shall be afforded to every proposed patient,* and if neither he nor others provide counsel the court shall appoint counsel. (Emphasis added.)

When we consider the purpose and the practical effect of the statute, the emphasized language can be quite reasonably understood to mean that the patient shall be afforded the "opportunity" of having counsel; but that it does not mean that he shall always be compelled to accept that opportunity. Every judge and every person acquainted with the situation knows that it is only in a very small percentage of the hundreds of insanity hearings held in our courts every year would it make any sense at all to have an attorney representing the interests of the patient.

The only justifiable objective of such a statute is this: that when it appears either necessary or desirable that the patient have counsel, he shall have one, either by private means, or with the assistance of the court. This, to my mind, is the reasonable and practical interpretation of the language of the statute and it has these advantages: it would be in harmony with the language of the statute as I have just discussed; it would eliminate cumbersomeness of procedure and inordinate expense mounting in hundreds of cases where there is no necessity nor justification whatsoever for such expense; it would be in substantial conformity with the actual procedure that has operated quite satisfactorily in our state practically ever since statehood.

The foregoing is in my mind the important aspect of this case. Whether the judgment of $75 in the instant case is affirmed or reversed is of no great importance insofar as the principle of law is concerned. However, it is my belief that the judgment should be reversed because there has been no proper proceeding against the County by which a judgment, large or small, could properly be assessed against it. See Washington County v. Day, 22 Utah 2d 6, 447 P.2d 189.