# Supreme Court of the Navajo Nation

---

**Steven Boos, Petitioner,**

**v.**

**Honorable Robert Yazzie,**
**District Court Judge of the Navajo Nation,**
**Window Rock, Arizona, Respondent.**
**Decided September 24, 1990**

---

## OPINION

Before TSO, Chief Justice, AUSTIN and CADMAN (sitting by designation), Associate Justices.

Steven Boos, Esq., Pro se Petitioner, DNA-People's Legal Services, Inc., Mexican Hat, Utah; Richard Hughes, Esq., Special Prosecutor for the Navajo Nation, Santa Fe, New Mexico, on behalf of Respondent; and Steven L. Bunch, Esq., DNA-People's Legal Services, Inc., Window Rock, Arizona, for Amicus Curiae DNA-People's Legal Services, Inc.

Opinion delivered by AUSTIN, Associate Justice.

## I

Petitioner Steven Boos initiated this original proceeding before this Court seeking to prohibit Judge Robert Yazzie, trial judge of the Window Rock District Court, from enforcing an order appointing petitioner to represent an indigent defendant accused of criminal offenses in the Navajo Nation trial court.

DNA People's Legal Services, Inc., (DNA) is a non-profit corporation which receives federal funding pursuant to the Legal Services Corporation Act, 42 U.S.C. §§ 2996 *et seq*. (1974). DNA uses federal funds to represent eligible indigent clients in federal and state courts and in the courts of the Navajo and Hopi Nations. Nearly all of DNA's clients in the Navajo Nation are members of the Navajo Tribe. DNA receives federal funds subject to conditions imposed by federal statutes and regulations promulgated thereunder.

Defendant Peter MacDonald Jr. is a member of the Navajo Tribe. Defendant MacDonald Jr. has been charged along with his father, Peter MacDonald Sr., of numerous criminal offenses in the Window Rock District Court of the Navajo Nation. The first group of charges making up the first case, *Navajo Nation v. MacDonald*, No. WR-CR-3642-3643-89, stems from allegations that the MacDonalds sought and obtained unlawful payments of money from persons

doing business with the Navajo Nation or seeking to do business with the Navajo Nation. This case was scheduled to commence trial on September 18, 1990. Since the filing of this petition, this trial has been rescheduled to start on September 26, 1990. The second group of charges making up the second case, *Navajo Nation v. MacDonald*, No. WR-CR-4314-4341-89, alleges certain criminal activities by the MacDonalds arising from the sale of the Big Boquillas Ranch to the Navajo Nation. This case is scheduled to commence trial on October 23, 1990. A third trial is scheduled to commence in December, 1990. That trial involves only defendant MacDonald Sr. and it involves allegations of Election Code violations.

On August 9, 1990, Judge Yazzie appointed petitioner Boos and co-counsel Lawrence Long to represent defendant MacDonald Jr. in the first two trials. These appointments were made after finding that the defendant was indigent. Mr. Long, who is not employed by DNA, has 17 years of legal experience in the Navajo courts. Mr. Long accepted his appointment without protest and is therefore not a party to this petition.

Petitioner Boos is an attorney employed by DNA at its office located near Mexican Hat, Utah. Petitioner is a member of the state bars of Arizona and Utah and has been a member of the Navajo Nation Bar Association (NNBA) since October, 1984. Aside from his appointment that is the subject of this petition, petitioner was appointed to represent a criminal defendant in a Navajo court only once during his six years of membership in the NNBA. That is also the only appointment he has received in a Navajo court during his employment with DNA. Also, while employed by DNA, petitioner was appointed once by a Utah state court to represent a defendant charged with a felony in a Utah court.

Judge Yazzie also appointed three other attorneys to represent either defendant MacDonald Jr. or his father in the three trials. Not one of the three other attorneys is employed by DNA. The first attorney is employed by the Navajo Nation, the second is employed by the Navajo Housing Authority, and the last is in private practice from off the Navajo Reservation.

Petitioner Boos previously filed with this Court a petition seeking a writ to prohibit Judge Yazzie from enforcing his appointment. Essentially, the same issue he raised in the first petition is the subject of this petition. We denied the first petition after finding that petitioner had failed to satisfy the requirements necessary for this Court to issue a writ. *Honorable Boos v. Honorable Yazzie*, No. A-CV-29-90 (Order filed on August 29, 1990). Petitioner filed a petition for reconsideration of our August 29, 1990 order which we denied by our order of September 6, 1990. Petitioner filed a second petition for reconsideration which we denied by order filed on September 12, 1990. On the second petition for reconsideration, petitioner presented relevant new facts and argument which he had not made in the original petition. Because the new facts came to light after we had decided the original petition, we permitted petitioner to file this present petition.

In addition, petitioner's employer, DNA People's Legal Services, has filed a

Motion for Leave to File Brief Amicus Curiae, together with a Brief of Amicus Curiae. This motion is granted and the Brief of Amicus Curiae is included in the record. The Navajo Nation, through its Special Prosecutor, has also submitted a Response Brief to petitioner's petition and DNA's brief. The Navajo Nation's brief is also made a part of the record.

## II

Two issues are presented in this petition. The first is whether petitioner's appointment to represent an indigent defendant charged with crimes in Navajo court violates 42 U.S.C. § 2996e(d) (6) and 45 C.F.R. § 1604. If there is a violation, petitioner shall be permitted to withdraw from court-appointed representation. The second is whether petitioner's appointment constitutes a taking of private property for public use without compensation in violation of 1 N.T.C. § 8 (1986).

### A

The Navajo Nation concedes that petitioner and DNA have satisfied the requirements set forth in *Yellowhorse v. Window Rock Dist. Ct.*, 5 Nav. R. 85, 87 (1986), for review of a petition for extraordinary relief. And just recently we held that a petition for a writ of prohibition is an appropriate remedy to test a trial court's ruling that an attorney cannot withdraw from a case. *Navajo Nation v. MacDonald Sr.*, 6 Nav. R. 206 (1990). We therefore will decide on the merits the questions raised.

In addition, DNA's brief demonstrates that a decision on the issues raised by petitioner Boos will affect every other DNA attorney or advocate who has been appointed to represent an indigent defendant in a criminal case in the Navajo district courts. Attached to DNA's brief is a memorandum to all DNA attorneys and advocates, dated September 7, 1990, directing them as follows:

> (1) Decline to take any further court appointments [and] (2) Inform the courts for current court appointments you cannot work on these cases. This includes *all* court appointments criminal or otherwise *with one exception.* (Emphasis in original).

The exception is made for guardian ad litem appointments.

The September 7, 1990 memorandum followed an emergency session of the DNA Board of Directors which unanimously voted to prohibit petitioner Boos from using DNA resources and worktime to represent defendant MacDonald Jr. The Board allegedly took this action on the advice of Timothy Shea, General Counsel of Legal Services Corporation.

B

This Court has the inherent power to regulate the practice of law within Navajo territorial jurisdiction. *In re Practice of Battles*, 3 Nav. R. 92 (1982); *Tafoya v. Navajo Nation Bar Ass'n.*, 6 Nav. R. 141 (1989); *Alderman v. Navajo Nation Bar Ass'n.*, 6 Nav. R. 188 (1990). An individual does not have an absolute right to practice law within Navajo jurisdiction. Instead, the practice of law in the Navajo Nation is a privilege granted to certain individuals who comply with the standards imposed by this Court. An individual's failure to meet those standards will result in denial of the privilege to practice law, and, under certain circumstances, disbarment. See *Tafoya*, 6 Nav. R. 141, and *In re Bowman*, 6 Nav. R. 101 (1989).

The Navajo Nation courts have the power to appoint any active member of the NNBA to represent an indigent party, including a defendant charged with crimes in a Navajo court. This practice has its roots, not only in the inherent power of this Court to regulate the practice of law and oversee an organized bar, but also in Navajo culture and traditions. Before the Navajo people adopted the adversarial system, a Navajo who was charged with allegations against the public order always had the right to have someone speak on his behalf.

This longstanding cultural practice, which is imbedded in the Navajo concept of fairness and due process, no doubt, contributed to enactment of 7 N.T.C. § 606 by the Navajo Tribal Council in 1959. This section, while prohibiting the appearance of professional attorneys in the Navajo courts, permitted any defendant to "have some member of the tribe represent him." The same section also provided that if a defendant "has no such representation, a representative may be appointed by the judge."

It was not until after the organized bar (NNBA) was formed in 1978 that Navajo judges began making appointments exclusively from the membership of the NNBA. In 1985, section 606 was amended to allow only NNBA members to appear in Navajo courts. Section 606 provides as follows:

> Legal counsel shall be allowed to appear in any proceedings before the Courts of the Navajo Nation provided that the legal counsel is a member in good standing of the Navajo Nation Bar Association. Every defendant in a criminal case shall have the right to have representation by legal counsel and in the event he has no such representation, he may proceed without legal counsel or a legal counsel may be appointed by the judge.

The Navajo Nation Bill of Rights also guarantees appointment of counsel for indigent criminal defendants charged in Navajo courts. 1 N.T.C. § 7 (1986) provides as follows:

> No person accused of an offense punishable by imprisonment ... shall ... be denied the right to have the assistance of counsel, at their own expense, and to have defense counsel appointed in accordance with the rules of the courts of the Navajo Nation upon satisfactory proof to the court of this inability to

provide for their own counsel for the defense of any punishable offense under the laws of the Navajo Nation.

Notably, the NNBA was conceived, incorporated and strengthened through the efforts of the DNA lawyers and advocates of the 1970s. Throughout DNA's existence, many DNA attorneys and advocates have been appointed by the Navajo judges, without compensation, to represent indigent criminal defendants in Navajo courts. Such appointments have also been borne by other members of the NNBA. Until now, no DNA attorney or advocate had challenged his or her appointment.

Petitioner Boos acknowledges, as he must, that the Navajo courts have power to appoint any member of the NNBA, without compensation, to represent an indigent defendant. But as to appointment of DNA attorneys, petitioner argues that the Navajo courts must comply with 42 U.S.C. § 2996e(d) (6) and the regulations promulgated thereunder. That section provides as follows:

> Attorneys employed by a recipient [DNA] shall be appointed to provide legal assistance without reasonable compensation only when such appointment is made pursuant to a statute, rule, or practice applied generally to attorneys practicing in the court where the appointment was made.

The regulation which petitioner Boos relies upon provides as follows:

> A recipient [DNA] may permit an attorney to engage in uncompensated outside practice of law if section 1604.3 is satisfied, and the attorney is acting: (A) pursuant to an appointment made under a court rule or practice of equal applicability to all attorneys in the jurisdiction....

45 C.F.R. § 1604.5. The regulations also set forth a general policy: "No attorney shall engage in any outside practice if the director of the recipient has determined that such practice is inconsistent with the attorney's full-time responsibilities." 45 C.F.R. § 1604.3.

It is clear that Congress imposed conditions upon use of grant money made available to DNA. For example at 42 U.S.C. § 2996f(a) (4) we find the following directive:

> (a) Requisites. With respect to grants or contracts in connection with the provision of legal assistance to eligible clients under this title, the corporation shall ... (4) insure that attorneys employed full time in legal assistance activities supported in major part by the corporation refrain from (A) any compensated outside practice of law, and (B) any uncompensated outside practice of law except as authorized in guidelines promulgated by the corporation.

DNA uses federal money to provide legal assistance to many Navajo individuals who are unable to afford counsel. This Court certainly will not jeopardize allocation of those funds. Consequently, this Court agrees with petitioner Boos that all Navajo court appointments of DNA attorneys must comply with applica-

ble federal statutes and the rules promulgated thereunder. Such is also the position of the Navajo Nation's Special Prosecutors.

The question then is whether petitioner Boos was appointed pursuant to "a statute, rule, or practice applied generally to attorneys practicing in the court where the appointment was made." 42 U.S.C. § 2996e(d) (6). Petitioner Boos argues that "[n]o such rule or statute exists in Navajo practice." If petitioner is correct then the inquiry ends and this Court must order petitioner's withdrawal.

We rule against petitioner on this issue for the following reasons. We have cited two statutes enacted by the Navajo Tribal Council that govern appointment of attorneys in criminal cases. They are 1 N.T.C. § 7 (1986) and 7 N.T.C. § 606 (1985). In 1978, the Navajo Supreme Court adopted the present version of the Navajo Rules of Criminal Procedure. Rule 6 of those rules requires a Navajo judge to appoint counsel for an indigent defendant in a criminal proceeding. Rule 6 provides as follows:

> The day of arraignment of a defendant shall be the day he is first brought before the Court. Arraignment shall be conducted in open court. The defendant shall be advised that he is entitled to be represented by counsel and that if he does not have counsel, *counsel shall be appointed by the Court upon proper application to the Court and evidence that the defendant is indigent.* (Emphasis added).

On April 23, 1990, this Court entered an order entitled "Order Establishing Mandatory Requirements Regarding Pro Bono Appointments in the Navajo Nation." Order SCAP-4-90. The relevant part of that order provides as follows:

> 1. As a condition of membership in the Navajo Nation Bar Association *all* members not in positions exempted by Rule of the Supreme Court shall accept pro bono appointments to represent indigent criminal defendants, indigent parents who are subject to termination of parental rights proceedings under the Children's Code, and to serve as guardian ad litem or as legal representative for children, mentally handicapped or impaired and incompetents. (Emphasis added).

There are two statutes, an order, and a rule that govern and control all appointments of counsel made by the Navajo courts for indigent individuals.

The next inquiry is whether petitioner Boos was appointed to represent defendant MacDonald Jr. pursuant to either the statutes, rule or order mentioned. Although the Navajo trial courts have inherent and statutory powers to appoint counsel, exercise of those powers is supervised by this Court using Rule 6 and Order SCAP-4-90. The Court supervises using its power of superintending control over lower courts. *See In re Contempt of Sells*, 5 Nav. R. 37 (1985). Navajo courts must use the order and Rule 6 to make all appointments for indigent individuals.

Navajo courts use the following uniform procedures in making criminal appointments without compensation. The district court must first advise the

defendant of his right to counsel at his own expense. 25 U.S.C. § 1302 (6) (1968); 1 N.T.C. § 7. If the defendant cannot afford counsel, counsel shall be appointed upon a finding of indigence. 1 N.T.C. § 7; 7 N.T.C. § 606. The defendant fills out a form supporting his indigent status. N.R.Cr.P. 6. The court uses the information given by the defendant and usually a hearing to determine whether defendant is indigent. If the defendant is found indigent, counsel must be appointed from the active membership of the NNBA as required by 7 N.T.C. § 606 and Order SCAP-4-90. No evidence has been presented by petitioner either to show that his appointment did not conform to these procedures or that his appointment was not made specifically pursuant to Order SCAP-4-90. Thus, we hold that petitioner Boos was appointed using an established procedure consistent with Navajo statutory law, a rule of criminal procedure, and specifically Order SCAP-4-90.

In answering the next inquiry we need only be concerned with Order SCAP-4-90 because it is this Order that Navajo Nation judges specifically apply in making their appointments. The inquiry is whether Order SCAP-4-90 is *applied generally* to attorneys practicing in the court where Boos' appointment was made. See 42 U.S.C. § 2996e(d) (6). Boos' appointment must also comply with 45 C.F.R. § 1604.5. This regulation requires that Boos' appointment be made "[p]ursuant to ... a court rule or practice of *equal applicability* to all attorneys in the jurisdiction." (Emphasis added). 45 C.F.R. § 1604.5(a). The Act requires *general application* of the rule or practice and the regulation requires *equal application*. We read section 2996e(d) (6) and section 1604.5(a) together. They require only that the rule or practice *itself* must be applied equally to all attorneys who practice in the court where the appointment is made.

The Act and the regulation cited above cannot be interpreted to mean that the *effect* of such rule or practice must be equally borne by all practitioners. For example, they do not require courts to appoint one non-legal services attorney for each legal services attorney appointed. Such an interpretation would result in a federal law and regulation usurping court rules and practices of the various jurisdictions. We doubt Congress and Legal Services Corporation intended to prescribe rules of practice for every jurisdiction in the Nation.

Such an interpretation also would cast a disproportionate burden of court appointments on the private practitioners in the Navajo Nation. There are few private practitioners in the Navajo Nation. If one non-DNA attorney is appointed for each DNA attorney appointed, the same non-DNA attorney may be appointed three or four times before the first DNA attorney is appointed again. Order SCAP-4-90 is intended to cure complaints by private practitioners that they are receiving the bulk of the appointments while practitioners employed by DNA and the Navajo Nation are hardly ever appointed. Petitioner's appointment once in the six years that he has been a member of the NNBA clearly bears this out.

The main purpose behind Order SCAP-4-90 and the implementing rule is to ensure that Navajo court appointments are equally borne by all NNBA members

on active status. The implementing rule specifically states so: "Every member of the Navajo Nation Bar Association shall accept pro-bono appointments." Another purpose of the order is to ensure that attorneys employed by DNA and the Navajo Nation are equally considered for appointment with other active NNBA members.

Order SCAP-4-90 and its implementing rule went into effect on April 23, 1990. Because of the short period of time that the order has been in effect, we are unable to gather meaningful statistics on the number of appointments made using the order. We can, however, look at the four appointments made by Judge Yazzie in the MacDonald cases. Out of the four appointments Judge Yazzie made, only petitioner Boos is employed by DNA. This in itself shows that Judge Yazzie applied Order SCAP-4-90 equally to all members of the NNBA.

Petitioner and DNA have not presented any evidence to show that Judge Yazzie did not apply Order SCAP-4-90 equally to all members of the NNBA. Petitioner also has not identified anything on the face of the order or its implementing rule to show that they have not been applied in an evenhanded manner. The language of the order clearly shows that it is to be applied equally to all members of the NNBA: "As a condition of membership in the Navajo Nation Bar Association *all members* not in positions exempted by Rule of the Supreme Court shall accept pro bono appointments...." (Emphasis added). The rule adopted under this order states that, "*Every member* of the Navajo Nation Bar Association *shall* accept pro bono appointments." (Emphasis added). We hold that Order SCAP-4-90 has been applied equally to all attorneys within Navajo jurisdiction.

Our analysis does not end there because petitioner and DNA argue that "Federal law requires that the appointment *mechanism* be an 'order or practice of equal applicability to all attorneys.'" (Emphasis added). Petitioner and DNA also argue that the "Legal Services Corporation Act basically requires an order or formalized procedure for providing a *rotation panel* in which all practitioners participate." (Emphasis added). Petitioner and DNA further contend that "the Window Rock District Court does not allocate its court appointments pursuant to any such evenhanded *rotational* system." (Emphasis added).

In support of his arguments, petitioner has attached affidavits of two Navajo court practitioners to show that appointments made by the Navajo courts are not "made in a way that equalizes either the workload among practitioners, or the number of appointments by practitioners." Affidavit of Peter Breen; see also Affidavit of Brenda Anderson. These affidavits do not mention Order SCAP-4-90; therefore, they are not persuasive.

DNA likewise has attached an affidavit of DNA's present Director of Tribal Advocacy, Thomas J. Holgate, alleging that he had a conversation with Judge Yazzie concerning Boos' appointment. According to this affidavit, Judge Yazzie told Mr. Holgate that "he wanted someone from DNA or Navajo Legal Aid and Defender Office" to represent defendant MacDonald Jr. The Judge is alleged to have said, "DNA has the resource, it is local and that DNA provided their serv-

ice free of charge ... [and] for the amount of work and time involved in preparing and defending this case it would deplete the resources of the private practitioners and virtually take their livelihood away...." Affidavit of Thomas J. Holgate.

Holgate's affidavit does not show that Judge Yazzie applied Order SCAP-4-90 unequally. First, neither DNA's brief nor the affidavit refute our finding that Judge Yazzie applied the order equally. Second, the affidavit is not supported by other evidence showing that Judge Yazzie applied the order unequally in the past. Finally, because defendant's cases involve multiple counts, Judge Yazzie exercised appropriate discretion in this appointment by considering the economic effects of the appointment, availability of local resources to appointed counsel (library, support staff, etc.), proximity of DNA's office to the court, and the interests of the defendant in being represented by experienced counsel and one with a law school education.

Petitioner Boos' and DNA's contention that the Legal Services Corporation Act and its regulations require a "rotation panel" is clearly not supported by the Act itself nor the regulations. We have thoroughly examined the Act and the regulations promulgated thereunder and have found nothing requiring courts to implement a system utilizing a "rotation panel" in their appointments of counsel without compensation.

DNA attached to its motion ten letters addressed to various legal services programs from the Corporation's General Counsel discussing various court appointments. In our review of these ten letters, which comprise 26 pages of legal analysis, we have found only one reference to a "rotation system." On page two of a July 7, 1981 letter to William Cobb, Georgia Legal Services Program, is found this language:

> Under Part 1613 of the regulations, a Program Board may turn away appointments to criminal cases which are not made pursuant to a statute or court rule of equal applicability to all attorneys in [the] jurisdiction. A court may not repeatedly call upon legal services attorneys to undertake criminal litigation which is not required with the same frequency of other attorneys in the community. However a *rotation system* of appointments, where the attorney pool contain all the lawyers in the jurisdiction, *would not* violate this principle. (Emphasis added).

Nothing in the language quoted above suggests that the Corporation views a "rotation system" as the only method that courts may use to satisfy the Act or its regulations. Certainly a "rotation system" is one method that can be used by courts in their appointments. The Act, the regulations, and the Corporation itself, however, do not require courts to use only the "rotation system."

Since entry of our order of April 23, 1990, SCAP-4-90, the Navajo Nation trial judges have adopted a uniform practice of maintaining a list of all members of the NNBA, and specifically identifying those members practicing within the court's judicial district. The judges make their appointments in alphabetical order

from the list of names of those members practicing within their judicial districts. If unable to appoint a member from their judicial district, they then appoint from the list containing the entire membership. This method of appointment applies to all NNBA members and is similar to the "rotation system." No evidence has been presented by either petitioner or DNA to show that an evenhanded method was not used by Judge Yazzie.

The letters from Legal Services Corporation express concern about legal services programs receiving a disproportionate share of appointments. As we mentioned above, in our jurisdiction, the private bar was complaining of receiving a disproportionate share of appointments. Order SCAP-4-90 is intended to cure these kinds of disproportionate appointments.

Finally, petitioner's appointment to represent defendant MacDonald Jr. on criminal matters in a Navajo Nation court is not a violation of federal law. 42 U.S.C. § 2996f(b) (2) provides as follows:

> No funds made available by the corporation under this title, either by grant or contract, may be used ... (2) to provide legal assistance with respect to any criminal proceeding except to provide assistance to a person charged with a misdemeanor or lesser offense or its equivalent in an Indian tribal court.

Federal Regulation, 45 C.F.R. § 1613.2, provides a general definition for criminal proceedings. This regulation provides that, "A misdemeanor or lesser offense tried in an Indian tribal court is not a 'criminal proceeding.'"

Defendant has been charged in Navajo court with what amounts to misdemeanors. The maximum penalty on any offense is a $500.00 fine and, or, six months in jail. Petitioner's appointment does not violate federal law.

## C

The final issue is whether petitioner Boos' appointment constitutes a taking of private property for public use without just compensation in violation of the Navajo Nation Bill of Rights, 1 N.T.C. § 8 (1986). We hold that it does not.

Section 8 of the Navajo Nation Bill of Rights provides as follows: "[P]rivate property [shall not] be taken nor its lawful private use be impaired for public or governmental purposes or use, without just compensation."

Petitioner argues that his appointment to represent an indigent defendant without compensation is a taking of his private property without just compensation. Petitioner relies on *Bedford v. Salt Lake County*, 22 Utah 2d 12, 447 P.2d 193 (1968), to bolster his argument. The court in *Bedford* said that a statute passed by the state legislature requiring appointment of an attorney to represent an indigent defendant is an unconstitutional taking of private property (the attorney's services) as long as the legislature does not provide a method by which a lawyer can be paid.

*Bedford* is not applicable in Navajo jurisdiction. We choose to follow those line of cases that have held that appointment of an attorney to represent an indi-

gent defendant is not a taking of private property for public use. *United States v. Dillon*, 346 F.2d 633 (9th Cir. 1965); *Williamson v. Vardeman*, 674 F.2d 1211 (8th Cir. 1982). The reasons are simple. The practice of law in this jurisdiction is a privilege, not an absolute right. No attorney is forced to become a member of the bar of this jurisdiction. But once the attorney voluntarily becomes a member, that attorney assumes the obligation of ensuring that all individuals have equal access to justice.

The 1989 resident Navajo population of the Navajo Nation was estimated at 170,000. The 1988 estimated per capita income of the Navajo people residing on the Navajo Nation was $4,344.00. Navajo officials have estimated that at least one-half of the Navajo population residing on the reservation lives below the National poverty level. Statistics taken from *Chapter Images: 1989*, Division of Community Development, The Navajo Tribe, (May 1990) .

The majority of cases heard by the Navajo courts are criminal matters. In fiscal year 1989 (October 1, 1988 - September 30, 1989), 38,785 adult criminal cases were filed in the Navajo Nation District Courts. In comparison, 1,748 civil cases were filed in the Navajo Nation District Courts. *Statistics from Navajo Nation Judicial Branch Annual Report - Fiscal Year 1989*. Given the depressed economic conditions in the Navajo Nation, a large number of these defendants are unable to afford counsel. Their only means for equal access to justice is through court appointments. On the other hand, the Navajo Nation Government does not have the financial resources that states have to provide public defender services. For these reasons, court appointment of counsel to represent the indigent population of the Navajo Nation is necessary.

We believe that Congress recognized these circumstances and, thus, exempted criminal appointments by Indian tribal courts from its general prohibition on use of legal services funds for criminal representation. See 42 U.S.C. § 2996f(b) (2) and 45 C.F.R. § 1613.2. We therefore hold that petitioner Boos' appointment is not in violation of the Navajo Nation Bill of Rights.